## BUTLER & VOSBURGH vs. MILLER.

Whether a subsequent security of a higher nature is intended as *collateral* to a prior debt or as a *satisfaction and extinguishment* of it, depends upon the intention of the parties; but in the absence of any evidence of intention, the law regards the higher security as an extinguishment of the prior one. *Per* JEWETT, J.

Where a party, holding promissory notes for a debt and a chattel mortgage subsequently executed for the security of such debt, shortly after the execution of the mortgage, and before the time of payment by its terms had arrived, took from the debtor a bond payable immediately and a warrant of attorney to confess judgment, and perfected judgment thereon, for the same debt, including a further debt due to another individual, and with the assent of the debtor forthwith took out execution and caused it to be levied on the same property covered by the chattel mortgage: *it seems* that the *judgment* operates as a merger and extinguishment of the debt and of the chattel mortgage, and it was *held* that the bond and warrant of attorney, the judgment and subsequent proceedings of the parties, evinced an intention to *substitute* the latter for the former security, and that the lien of the chattel mortgage was thereby extinguished.

TROVER for a number of horses, cattle and hogs, and a quantity of farming utensils and growing crops, tried at the Columbia circuit in September, 1843, before CUSHMAN, late C. Judge. The plaintiffs gave in evidence a chattel mortgage executed to them by one Abraham B. Vanderpoel, dated April 19th, 1842, which had been duly filed in the proper town clerk's office. The instrument recited that Vanderpoel was indebted to the plaintiffs in the sum of $498,72, with interest from the 6th day of April then instant, for the amount of three several promissory notes made by Vanderpoel and then held by the plaintiffs, viz. one note dated 6th April, 1842, for $341,72, payable to the plaintiffs; one of the same date, for $125, payable to A. Bidwell & Son, and one dated 1st April, 1842, for $32, payable to W. Thomas; and to secure the same it professed to convey the property in question to the plaintiffs by way of mortgage, to become void if Vanderpoel should pay the debt with interest by the first day of October then next; but upon default being made, the plaintiffs were authorized to sell the property and pay themselves, &c. The plaintiffs then proved the execution by Vanderpoel of the notes mentioned in the

mortgage, and that they were given for debts just ly due from him; and also that the defendant was sheriff of the county of Columbia, and that Shaw, his deputy, sold the property in question on the 15th July, 1842, although forbidden on behalf of the plaintiffs. The value of the property was then shown by the plaintiffs, and they rested.

The defendant gave in evidence a judgment in this court in favor of the Lafayette Bank against Abraham B. Vanderpoel, for $1845,63, docketed March 30, 1842, and a writ of *fieri facias* upon that judgment to the sheriff of Columbia county, tested on the 2d, and delivered to the sheriff on the 5th May in the same year. Upon this execution it appeared that the deputy, Shaw, sold the property in question.

It was then admitted, that on the 7th day of May, 1842, Abraham B. Vanderpoel executed to the plaintiffs a bond and warrant of attorney to confess judgment, and that a judgment was on the same day perfected thereon in this court, for $1100 debt besides costs, and that on the same day execution was issued by the consent of Vanderpoel, and delivered to Reynolds, another deputy of the defendant, who levied the same upon the property of Vanderpoel, included in the chattel mortgage, and advertised the same for sale. The condition of the bond was for $514,81, payable immediately; and of this it was stated in the condition that $341,72 was the individual debt of the plaintiffs and was to be first paid to them, $125 was for the benefit of A. Bidwell & Son, $16,14 *for the benefit of J. A. Sickles,* and $32 for the benefit of W. Thomas; and the whole was on interest from the 6th day of April then last past. Upon the sale of the property by the deputy Shaw, Vosburgh, one of the plaintiffs, became the purchaser to a considerable amount, and at prices less than the value of the property as the same was proved at the trial. The defendant also proved that an application was made to this court, at the December special term in 1842, on behalf of the plaintiffs in this suit, for an order requiring the defendant, as sheriff of Columbia county, to apply the proceeds of the sale made by Shaw of Vanderpoel's property on the judgment and execution in their favor. This motion was based upon an allegation that

the execution in favor of the Lafayette Bank, when the same was first delivered to the sheriff, was directed to the sheriff of another county, and that the error was corrected *after* the execution in the plaintiffs' favor had been delivered to the sheriff. The plaintiffs' motion was however denied with costs. Among other points made on behalf of the defendant at the circuit, his counsel insisted that the plaintiffs' lien under the chattel mortgage was merged in the subsequent judgment confessed to them by Vanderpoel, or that the same was extinguished by their issuing execution on that judgment, and causing the property to be levied upon on said execution, and by their subsequent application to the supreme court. They also insisted that if the plaintiffs were entitled to recover at all, they could only recover in respect to the property bid off by them such amounts as they paid therefor. The judge however determined and instructed the jury, that the plaintiffs were not concluded by taking the bond and warrant and obtaining the judgment, or by their proceedings under it; and upon the question of damages, that they were not barred by the amount bid by the plaintiff Vosburgh, on purchasing the property at the sheriff's sale, but were entitled to the full value thereof. The defendant's counsel excepted, and the jury found a verdict for the plaintiffs. The case came before the court on a bill of exceptions.

*K. Miller*, for the defendant, cited *Yelv.* 39; *Higgens' case*, (6 *Co.* 44, (*b.*);) *Andrews* v. *Smith*, (9 *Wend.* 53;) *Thompson* v. *Hewitt*, (6 *Hill*, 254.)

*D. Cady*, for the plaintiffs, cited *Day* v. *Leal*, (14 *John. R.* 404;) *Davis* v. *Anable*, (2 *Hill*, 339.)

*By the Court*, JEWETT, J. The first question to be considered is, whether the chattel mortgage executed by Vanderpoel to the plaintiffs remained an existing valid conveyance of the title, by way of mortgage, to the property in question, after the recovery of the judgment on the seventh of May upon a bond executed for the same, and another debt due to a third person, not secured by

the mortgage, or was extinguished by the judgment, execution and levy made thereon? There can be no doubt but that, as a general rule, where a creditor accepts from his debtor a higher security than he before had, it is an extinguishment of the first debt, and the law, *prima facie*, presumes it intended as an extinguishment. · (*United States* v. *Lyman*, 1 *Mason's C. C. R.* 482.) In *Andrews and others* v. *Smith*, (9 *Wendell*, 53,) Savage, C. J. says: "The general principle of law governing in cases of this kind, and which applies to all securities, is, that a security of a higher nature extinguishes *inferior* securities, but not securities of an equal degree." (*Higgens' case*, 6 *Co.* 44, *b.*; 2 *Binney*, 152.) So if a bond creditor obtains judgment on the bond, or has judgment acknowledged to him, he cannot afterwards bring an action on the bond; for the debt is drowned in the judgment, which is a security of a higher nature than the bond." (4 *Bacon's Abr.* 149, (*D*).) It is also a rule, that the accepting of a security of equal degree is no extinguishment of the first debt: as where an obligee has a second bond given to him, for one deed cannot determine the duty upon another; nor is a judgment without satisfaction an extinguishment of a collateral remedy for the same cause of action. (*Chipman* v. *Martin*, 13 *John. R.* 240.) That case presented the question, whether a recovery on a covenant for the payment of rent without satisfaction was an extinguishment of the rent, and operated as a bar to the lessor's remedy by distress. It was held that it was not an extinguishment of the rent, and that the lessor might distrain notwithstanding. The same principle was maintained in the case of *The Bank of Chenango* v. *Hyde*, (4 *Cowen's R.* 567.) It is insisted on the part of the plaintiffs that the force and effect of their mortgage was not impaired by their subsequently taking a judgment and their proceedings under it; that it was merely a *collateral security* to the mortgage. The case of *Davis* v. *Anable* (2 *Hill*, 339) is cited as an authority to sustain that position. In that case the plaintiff brought assumpsit on the common counts for $600. The defendants pleaded, 1. Non-assumpsit; 2. That the plaintiff, together with two other persons named, had impleaded defendant Anable in a plea of debt,

on a bond executed by Anable to the plaintiff and the two other persons for the payment of $858,94, a part of which sum was the identical debt or promises on which the plaintiff is now suing, and recovered judgment on the bond, for $1700 of debt; that the plaintiffs in that action had collected by execution thereon $49,09 of the debt of the goods of Anable. To this the plaintiff demurred, and this court held that neither the bond nor the judgment, nor both of them together, constituted a good bar to the action. The court say—" The bond was not between the same parties that are now before the court; and it was not given for this debt alone, but included other demands. It was evidently intended as a collateral security for the debts included in it; and such a security, though of a higher nature, does not extinguish a simple contract debt." The case of *Day & Penfield* v. *Leal & Leal*. (14 *John. R.* 404) has also been referred to as an authority for the principle contended for. The plaintiffs in that case brought assumpsit, and on the trial gave in evidence two promissory notes payable to them, executed by the defendants, one for $1951,61, the other for $279,46. The defendants offered in evidence in bar of the action a receipt or writing, executed by the plaintiffs, by which it was recited that Robert Leal (one of the defendants) had executed to them a bond for $5000 conditioned to pay $2500, and also a warrant of attorney to enter up judgment thereon, and therefore it was agreed " that if Robert Leal should within eight months pay by instalments the amount due from Robert Leal & Co. (the defendants) to the plaintiffs, also the amount due from Robert and David Leal to the plaintiffs, also the amount due from Robert Leal to Orrin Day, also the amount due from Leal, Foot & Co. to the plaintiffs, then the judgment should be destroyed." The court said: " The question is, whether such bond was an extinguishment of the simple contract debt. We think it was not. It is very evident it was not intended, by the giving of the bond, to change the nature of the debt. It was not between the same parties, nor was it for this debt alone, nor for the exact amount of the notes in question. It was thus far only intended as a collateral security; and the taking a collateral security of a higher nature,

whether from the principal or a stranger, does not preclude the creditor from suing on the first contract, although judgment may have been entered on such collateral security, if it remains unsatisfied. The bond in this case was for a round sum; and there was no way to ascertain the real sum due upon it but by reference to the original demand, which must of course be deemed in existence and in force." These cases affirm nothing more than the general rule admits to be true. One branch of that rule is seen to be, that when the higher security is taken between the same parties for the same debt, the law presumes that it is taken in satisfaction of the original debt. Judge Story, in the case already referred to, says: "I admit the doctrine, that in general, a higher security taken from the debtor himself extinguishes the original contract. But this proceeds from a presumption of law, that it is taken in satisfaction of the original debt; for if it appear otherwise upon the face of the security, it will not operate as an extinguishment. Thus, a bond of the debtor with sureties, or a mortgage, may be taken as collateral security for the payment of a promissory note; and in such case it certainly does not extinguish the demand on the note. It is, therefore, after all, a mere question of intent; and the law, in the absence of all other evidence of the intent, construes the higher security of the debtor himself as an extinguishment, because it gives a higher remedy." And again: "But there is this difference between the case of a higher security of the debtor himself and of a stranger; that, in the latter case, the law does not presume the security to be taken in satisfaction, unless it is averred and proved to be the agreement of the parties so to consider it." If then the judgment was intended as a collateral security to the notes and mortgage before executed, it would be clear that the notes and mortgage were not merged in or extinguished by the judgment, but remained a valid conveyance, under which the plaintiffs could make title to the property mortgaged and sustain their action. The judgment, which is a higher security than the notes and mortgage, or either of them, was between the same parties. It was, so far as the plaintiffs, the mortgagees, are concerned,

Butler v. Miller.

for the same debt, and this appears upon the face of the securities. Does not the law presume that the judgment was taken in satisfaction of the original debt? I am of opinion that it does. But if such presumption cannot be indulged, do not the circumstances attending the transaction prove satisfactorily that it was the intent of the parties, originating in some cause, known and appreciated by them, to give and take a new security for the old one? I cannot persuade myself that they do not. The fact, that by the mortgage the payment of the debt due to the plaintiffs was postponed to the first of October, and did not include the debt due to Sickles, and the fact that the judgment was payable immediately, and included the debt to Sickles, that Vanderpoel consented to an immediate execution, which was issued and levied upon all of the mortgaged property, being all that Vanderpoel possessed which was liable to execution, and that too within a few days subsequent to the making the mortgage, forces me to the conclusion that the parties intended to substitute the bond and judgment for the notes and mortgage; and if so, the plaintiffs could not avail themselves of the mortgage through which to make title to the property in question.

The defendant contended on the trial that, at all events, the plaintiffs were not entitled to recover any greater sum as the value of that portion of the property which they bid off at the sheriff's sale than the amount at which they bid the same off, although the true value thereof was beyond such sum. The judge charged the jury on this part of the case, that the bidding off the property at the sheriff's sale for less than its value did not affect their right to recover the full value of such property in this action. I am of opinion that the learned judge in this part of his charge committed an error. The plaintiffs were entitled to recover only such sum for the value of that portion of the property as they bid, with interest on the same, although such sum was less than the true value of such property. (*Baker and others* v. *Furman*, 9 *Wend.* 36.) A new trial must be granted, costs to abide the event.

New trial granted.