BUTLER and VOSBURGH *vs.* MILLER.

It seems, that the question of fraud in a personal mortgage should be submitted to the jury, although no change of possession accompanies the mortgage ; and the verdict of the jury in favor of the *bona fides* of the transaction will be as conclusive as upon any other question of fact.

A judgment confessed by the mortgagor to the mortgagee for the same debt secured by a personal mortgage, does not merge or extinguish the mortgage, where by agreement the judgment is taken as collateral merely.

And even where there is no agreement that the judgment shall be held as collateral *quere,* whether a judgment for the debt can work an extinguishment of the mort-

Butler *v.* Miller.

gage. The case of *Butler and Vosburgh* v. *Miller*, (1 *Denio,* 407,) referred to and questioned in this particular.

But where execution upon a judgment confessed for the mortgage debt was issued, and levied upon the chattels mortgaged, which were advertised for sale thereunder, and after the same property was sold upon another execution against the mortgagor, the mortgagees moved the supreme court for an order directing the sheriff to apply the proceeds of the sale upon their execution; *held,* in an action of trover by the mortgagees against the sheriff who made the sale, that these acts were repugnant to any claim under the mortgage, and precluded the plaintiffs from so claiming the property.

It seems, that a personal mortgage transfers to the mortgagee the whole legal title to the thing mortgaged, subject only to be defeated by the performance of the condition.

THIS was an action of trover brought in the supreme court by Butler and Vosburgh against Miller, for a number of horses, cattle and hogs, and a quantity of farming utensils, and other property. The cause was first tried before CUSHMAN, late circuit judge, at the Columbia circuit, in September, 1843, when a verdict was had for the plaintiffs, which was set aside by the supreme court and a new trial ordered. (*See* 1 *Denio,* 407.) A second trial was had before PARKER, circuit judge, in March, 1846, and on that trial the case was as follows:

The plaintiffs gave in evidence a chattel mortgage upon the property in question, executed to them by one Abraham B. Vanderpoel, dated April 19, 1842, which had been duly filed in the proper town clerk's office. The instrument recited that Vanderpoel was indebted to the plaintiffs in the sum of $498,72, being the amount of three promissory notes made by Vanderpoel, and held by the plaintiffs, and the mortgage was to become void if Vanderpoel should pay the debt by the first day of October then next. Evidence was given tending to show a just consideration for the notes. At the time the mortgage was given the property was on the farm of the mortgagor, and was used by one Mosher, who worked the farm on shares, under an agreement by which Vanderpoel was to furnish teams, stock and utensils. After the mortgage was given the property remained on the farm, and was used as before. On the 15th day of July, 1842, the defendant, as sheriff of the county of Columbia, sold the property in question by virtue of an execu-

tion against Vanderpoel, in favor of the Lafayette Bank, which was delivered to the sheriff on the 5th of May, 1842. The evidence tended to show that the plaintiffs asserted their claim under the mortgage at the sale, and forbid the sale.

It also appeared that on the 7th of May, 1842, the plaintiffs took from Vanderpoel a bond and warrant of attorney for the amount of the notes secured by the mortgage, upon which judgment was entered in the supreme court on the same day, and execution thereon was, by Vanderpoel's consent, issued immediately to one of the deputies of the sheriff aforesaid. It was also proved, after objection duly made and exception by the defendant's counsel, that it was agreed between the plaintiffs and Vanderpoel that the judgment should be taken as *collateral to the mortgage*. The plaintiffs' execution, soon after it was issued, was levied upon the property in question, and the property was advertised for sale both under that execution and the one above mentioned in favor of the Lafayette Bank.

It also appeared that after the sheriff's sale above mentioned, the plaintiffs made a motion in the supreme court for an order requiring the defendant, as such sheriff, to apply the proceeds of the sale on the judgment and execution in their favor. This motion was based upon an allegation that the execution of the Lafayette Bank, when first delivered to the sheriff, was directed to the sheriff of the county of *Hudson*, (there being in fact no such county,) and that the error was corrected and the execution redelivered to the sheriff *after* the execution of the plaintiffs was issued. The motion was denied with costs.

The defendant's counsel requested the circuit judge to decide and charge the jury, 1. That the mortgage under which the plaintiffs claimed was fraudulent and void as against the judgment and execution of the Lafayette Bank. 2. That the judgment taken by the plaintiffs on the 7th of May, 1842, for the same notes secured by the mortgage, merged the notes and extinguished the lien of the mortgage. 3. That the issuing of execution upon that judgment, the levy upon the mortgaged property, and the motion to the supreme court to have the proceeds of the sheriff's sale applied upon that execution, were

Butler *v.* Miller.

severally acts inconsistent with any claim under the mortgage, and destroyed all right to assert any such claim. The circuit judge ruled, that the question of fraud was one of fact for the jury to decide. That the judgment was not a merger or extinguishment of the mortgage, if it was taken as collateral merely; if not so taken, then that it was a merger. Upon the 3d proposition he refused to charge as requested. The defendant excepted, and the jury gave their verdict for the plaintiffs. The defendant moved in the supreme court for a new trial on bill of exceptions, which was granted by that court. The plaintiffs appealed to this court under the judiciary act of December, 1847.

*K. Miller,* for the defendant.

*J. H. Reynolds,* for the plaintiffs.

JOHNSON, J. The question of the *bona fides* of the mortgage was properly submitted to the jury, and their verdict in favor of the honesty and fairness of the transaction is conclusive according to all the cases since *Smith* v. *Acker,* (23 *Wend.* 653.)

The circuit judge was requested to charge the jury that the subsequent judgment on the notes operated as a merger of the notes and consequently avoided the mortgage. The judge, however, charged that the judgment did operate as a merger of the notes and mortgage unless it was satisfactorily shown that the judgment was taken as collateral to the mortgage, in which case it was not a merger.

The charge upon this point was in strict accordance with the rule laid down by the supreme court, (1 *Denio,* 407,) when this cause was before it on a former trial, and must be regarded as correct unless that court was then in error as to the true rule upon the subject.

It may perhaps well be doubted whether the judgment was a security of a higher nature than the personal mortgage; and even if it were, whether it would operate to extinguish the mortgage and divest the mortgagees of the title they had ac-

quired under it. It will scarcely be contended that in case the notes in question had been secured by a mortgage upon real estate, a judgment upon them would have extinguished such mortgage. And yet a mortgage upon real estate is a mere security and incumbrance upon the land and gives the mortgagee no title or estate therein whatever. Whereas a personal mortgage is more than a mere security. It is a sale of the thing mortgaged and operates as a transfer of the whole legal title to the mortgagee, subject only to be defeated by the full performance of the condition. And if it be conceded that a judgment upon the original indebtedness would not extinguish a collateral security for its payment upon real estate, I do not see how it could divest a title to personal property acquired by purchase. A vested legal title, whether in real or personal property, is the highest of all securities—certainly higher than the mere lien of a judgment upon land, or the right of a plaintiff to personal property acquired by levy under an execution.

Although it is clear that the notes were merged in the judgment by operation of law, it does not, as I think, certainly follow that all the collateral securities would be extinguished. The debt is not yet satisfied. The notes may have been cancelled, but the debt was not, and until that is done it seems to me that all mere collateral securities, whether upon real or personal property, should be allowed to stand; especially titles to property acquired under instruments where the parties stand in the relation of vendor and purchaser without fraud. The rule that security of a higher nature extinguishes inferior securities will be found, I apprehend, only to apply to the state or condition of the debt itself, and means no more than this—that when an account is settled by a note, a note changed to a bond, or a judgment taken upon either, the debt as to its original or inferior condition is extinguished or swallowed up in the higher security; and that all the memorandums or securities by which such inferior condition was evidenced lose their vitality. It has never been applied, and I think never should be, to the extinguishment of distinct collat-

eral securities, whether superior or inferior in degree.   These are to be cancelled by satisfaction of the debt or voluntary surrender alone.   This most obvious and rational distinction seems to have been overlooked by the supreme court in the opinion to which I have referred.

It is unnecessary, however, to decide the question here discussed, as it was put to the jury substantially to find whether it was agreed or intended by the parties in entering up the judgment to cancel the mortgage; and I admit that if such had been the agreement and intention, there was sufficient consideration to support it, and that the mortgage must have yielded to the superior force of the agreement, whether express or implied.

The jury have determined by their verdict that the parties to the mortgage did not intend to cancel it, and that notwithstanding the judgment, it remained a valid subsisting security.

Thus far then it seems to be established by the verdict, that at least up to the time of the execution being placed in the hands of the sheriff by the plaintiffs, the mortgage was a valid instrument in their hands, and vested in them the legal title to all the property it purported to convey, subject to be defeated only by payment and satisfaction, or voluntary waiver or surrender.

It remains to be seen whether the plaintiffs have in any way divested themselves of their title to the property thus acquired, or been guilty of any acts which would authorize the court to estop them from asserting their rights under the mortgage.

If this was a mere question as to whether a party might pursue one of several remedies or collateral securities to any extent short of actual satisfaction without prejudice to the others, no one I apprehend could entertain any doubt.   But that is not the question.   The precise question here is whether the plaintiffs in pursuing their remedy under the judgment have not so treated and dealt with the property in question as to preclude themselves from setting up their title or claim to it under the mortgage.   At the time the plaintiffs' execution was issued the sheriff as against them had no right to seize the property and

sell it as Vanderpoel's without first paying their mortgage, and could acquire no such right except through their assent express or implied. And when they voluntarily placed their execution in the hands of Reynolds, the deputy, with directions to him to levy upon this property and sell it, they certainly to that extent unequivocally consented to its being treated as Vanderpoel's. And had they afterwards stood by and suffered it to be sold without objection, they would have been estopped forever from asserting their title or claim under the mortgage. (*Cowen & Hill's Notes*, 200, 201, 203.)

It seems to me, however, that at any time before sale or before any third person was placed by means of such assent in a situation to be thereby prejudiced, it was clearly revocable. (*Id. and cases there cited; Wallis* v. *Truesdell,* 6 *Pick. Rep.* 455; *Uffred* v. *Lucas,* 2 *Hawks,* 214.) It can make no difference, that I can perceive, that the party to whom such consent or permission is given is a public officer whose custody of the goods is the custody of the law, and who is to make a title to third persons by sale under legal process. The right to make or convey a title at all, where the defendant in the execution is not the true owner of the property, must rest upon the assent either express or implied of the person who has the real title, and if that assent may be withdrawn by him and his own title asserted at any time before the right of selling it as the property of the defendant in the execution has been exercised by the officer, a sale afterwards would be as unauthorized and tortious as though no such assent had ever been given. The rights of the plaintiffs in the execution first in the hands of the sheriff had not as yet been prejudiced or in any manner affected. They were as perfect after the plaintiffs in this suit had forbid the sale, unless their mortgage was first satisfied, as they were before the latter execution was placed in the sheriff's hands. Nor could the defendant or those whose interests he represents complain that they had been misled or suffered to act in ignorance of the plaintiffs' claims. They had notice in season to put them upon inquiry, and proceeded afterwards at their peril.

Butler *v.* Miller.

If the grounds I have assumed are correct, that the authority to the defendant to dispose of the property as that of Vanderpoel, given by the plaintiffs, when they placed their execution in his hands, was revocable, and that they did revoke it before the sale and in time to preserve their rights under the mortgage, it follows that they ought to recover unless it can be made to appear that their application for the money in the hands of the sheriff, subsequent to the sale, was an effectual waiver or relinquishment of the claim asserted by them before the commencement of the sale, and a ratification of the sale, notwithstanding the dissent at the time.

But how stands the case here? Having placed themselves in a situation to vindicate their rights as owners under the mortgage, have not the plaintiffs by their subsequent acts entirely abandoned the ground assumed at the opening of the sale, and returned to the one they elected to occupy when they directed the sheriff to levy upon and sell the property as Vanderpoel's by virtue of their execution? The bill of exceptions shows that one of the plaintiffs bid off a portion of the property at the sale, and in pursuance of some prior arrangement by which a credit was to be given to enable the parties to get a decision of the supreme court upon their conflicting claims for the proceeds of the sale, gave his note to the sheriff at ninety days for the amount of his bid. And after the sale, according to their affidavit, and while the money was in the hands of the sheriff's deputy, they insisted that he should first satisfy their execution still in his hands by applying the money thereon. This the sheriff refused to do. And upon this refusal the plaintiffs, on an affidavit and notice to the plaintiff's attorney in the other execution, moved the supreme court to have the avails of the sale applied to the satisfaction of their execution in the first instance. The affidavit upon which they founded their motion contains no intimation that the sale was not with their assent and for their benefit. Indeed the application could proceed upon no other conceivable idea than that of their execution continuing in the hands of the officer as a valid process binding upon the property held by him and entitled to satisfaction from the proceeds of the sale

It implies the full and unequivocal concession that Vanderpoel was the owner of the property, and that the moneys growing out of the sale belonged to his creditors having executions in the sheriff's hands at the time of the sale. It can make no difference that I can perceive in principle that their application was denied and their debt remains unsatisfied.

Having abandoned the grounds they assumed at the opening of the sale, and elected to treat the sale as a legal and valid transfer of the property to the purchasers, and asserted their rights as creditors of Vanderpoel to the proceeds of the sale by virtue of their execution, and afterwards compelled the other claimants to come into court and litigate their claim to the same ; they must rest content although judgment passed against them. They are adjudged to stand in the same situation as though they had interposed no objection from the beginning, but had acquiesced throughout in the proceedings of the sheriff. It was said upon the argument that the supreme court in deciding the question upon the motion, held that the plaintiffs were estopped from claiming the moneys arising from the sale, and sent them back to the rights asserted by them under their mortgage. But no such question is presented by the bill of exceptions, or was before the circuit judge, and cannot be raised and passed upon in this court.

I am of opinion, therefore, that the circuit judge erred in his refusal to charge the jury as requested by the defendant in regard to the plaintiffs' proceedings to obtain the money after the sale, and that a new trial should be granted.

New trial granted.