## THE ARCHER.

*(Circuit Court, S. D. New York.   March 26, 1885.)*

1. BOTTOMRY BOND—MASTER APPEARING AS PART OWNER—REPAIRS AND SUPPLIES.

   The master of a vessel was also the registered owner, but another was the equitable owner. The vessel having met with disaster, the master executed a bottomry bond to secure advances for repairs and supplies. He was in communication by mail and telegraph with the equitable owner, and the latter was ready to provide funds. *Held*, that the holder of the bottomry bond, with knowledge of all the facts at the time he took it, could not recover; that the equitable owner should be regarded as the legal owner of the vessel; and that the master had no authority to execute the bond, but that, to the extent the bond represented supplies and repairs which the master could properly order, the holder should be subrogated to the liens therefor.

2. SAME—AUTHORITY OF MASTER.

   A master can make a bottomry bond only abroad and from necessity. He has no power to do so if the owner can be consulted, or if he can borrow money on the credit of the owner.

Admiralty Appeal.

For opinion of BROWN, J., in district court, see 15 FED. REP. 276.

*Theodore F. H. Meyer,* for libelant and appellee.   *Robert D. Benedict,* of counsel.

*Goodrich, Deady & Platt,* for claimant.

WALLACE, J.   In October, 1877, the bark Archer sailed from Bremerhaven, bound for New York, but met with disaster and put back to Bremerhaven for repairs, reaching that port November 1st.   Crossman, the master of the bark, applied to Meiners, who represented the late firm of F. Roters & Co., for assistance.   Roters & Co. had been the consignees of the ship on former occasions.   Crossman told Meiners that he could draw on New York for the disbursements, and Meiners told him that would be satisfactory, and to go on with the repairs.   Crossman had surveys made and the repairs were proceeded with, and bills were sent to Meiners, who paid them, but after having paid some of the bills Meiners insisted upon a bottomry bond as a security for the advances made and to be made.   Crossman demurred, but finally consented, and the bottomry bond on which the suit is brought was executed.   The bond was given to one Addicks, but, in fact, Meiners was jointly interested in it with Addicks.   It was conditioned for the payment of 21,371 marks, with 20 per cent. premium.

The important question in the case is whether Meiners and Addicks relied upon the authority of Crossman, as owner, in executing the bond, or whether they dealt with him as master only.   Crossman had no beneficial interest in the ship.   He had executed two mortgages: one covering three-fourths of the ship, which became due July 1, 1877, for $3,000, and had not been paid, and another not then due, covering the whole ship, for $7,000.   These mortgages were held by the claimant, Harrison, and exceeded in amount the value of the ship. Harrison, however, had allowed Crossman to continue in possession after default in the $3,000 mortgage under a register and ship's pa-

pers which represented him as sole owner. Although the legal title to three-fourths of the ship was in Harrison after default took place in the payment of the $3,000, and although Crossman had no substantial interest in the other fourth, if Meiners and Addicks treated with him upon the faith of his apparent title, the decree of the district court should be affirmed. If, however, they understood that he had only a naked legal title, and did not assume to contract as owner, but only as master, different considerations arise.

The proofs warrant the conclusion that Crossman, after putting back to Bremerhaven, put himself in communication by mail with Harrison, and informed Meiners of the fact, and when he received a cablegram from Harrison authorizing him to draw on New York, at 60 days, for necessary funds, handed it to Meiners; that Meiners satisfied himself by telegram of Harrison's responsibility, and was aware that he was the person whom Crossman assumed to represent in ordering the repairs; that Meiners intended, until about the seventeenth of December, to make the advances necessary on the credit of Crossman's drafts on Harrison, but then conceived the scheme of making a profit out of the transaction by means of bottomry. Influenced by this motive he insisted upon a bottomry bond, and induced Addicks to co-operate, concealing from Crossman the fact that he had any interest in the bottomry except to the amount of his advances. Addicks offered to advance the necessary funds, and to overcome Crossman's objections to giving a bond with 20 per cent. premium, proposed to make the interest 25 or 30 per cent., and give the difference to Crossman. After the bond was executed, Meiners gave Crossman 400 marks as coming from Addicks as a commission or gratuity. The district judge, in his opinion, states that he could not doubt that Harrison "was known to Meiners and Addicks, at the time of the negotiation for the bond, to be in the position of beneficial owner, though not the legal owner." It seems equally clear that neither of them supposed that Crossman intended to contract as an owner, pledging his own ship, but understood that he was acting as a master who was obliged to make the best terms he could under the circumstances, and who could be induced to consent to bottomry by the payment of a commission. Quite conclusive evidence of this is found in the circumstance that in the recitals of the bond Crossman is represented as the master of the ship, and not as the owner.

It was held by the learned district judge that Crossman, as master, had no authority to execute the bottomry bond, but that the bond was valid because he was the legal owner at the time of executing it. The master can make a bottomry bond only abroad and from necessity. He has no power to do so if the owner can be consulted, or if he can borrow the money on the personal credit of the owner. Communication was practicable here, both by mail and by telegraph; yet Crossman did not consult with Harrison further than to ascertain that the latter was willing to provide the necessary funds. The court below

was clearly right in deciding that the bond could not be upheld as a valid contract of the master.

The learned district judge seems to have considered Crossman to be the owner because he appeared to be such on the ship's register, and Harrison was only a mortgagee. But Crossman had the title to but one-fourth of the vessel after default had been made in the $3,000 mortgage (*Brown* v. *Bement*, 8 Johns. 76; *Butler* v. *Miller*, 1 N. Y. 496; *Burdick* v. *McVanner*, 2 Denio, 170,) and the ship's register was at best but *prima facie* evidence of Crossman's title as owner. *Myers* v. *Willis*, 17 C. B. 77; S. C. 18 C. B. 886; *Hibbs* v. *Ross*, L. R. 1 Q. B. 534; *Morgan's Assignees* v. *Shinn*, 15 Wall. 105; *Blanchard* v. *Fearing*, 1 Allen, 118.

Undoubtedly, by allowing Crossman to remain in possession of the ship and proceed on a voyage with his name in her register as owner, after Harrison's title to three-fourths had accrued, the latter authorized third parties to rely upon Crossman's apparent title as owner, and would be estopped from asserting his own rights as owner against any persons who might contract upon the faith of Crossman's title. But Meiners and Addicks had full notice that Harrison was the beneficial and therefore the equitable owner, and they understood that Crossman was not assuming to act in behalf of any interest or title of his own, but only as master; or, in other words, as an agent for an owner. No estoppel can arise in their favor. Their position is no different than it would be if they were asserting their bond against an ordinary owner, who had the legal title to the ship at the time of the bottomry. If the bottomry would not have been good against an ordinary owner, it is not good against one who occupied the relation of owner in the transaction within the contemplation of all the parties. Upon the equitable principles which prevail in courts of admiralty, the lien of the bond must be deemed subordinate to the rights of Harrison.

To the extent that Crossman, as master, had authority to represent Harrison as owner, and subject the ship to liens for necessary repairs and supplies, the bond should be sustained, and the libelants be deemed subrogated to the liens. In the language of STORY, J., in *The Packet*, 3 Mason, 255, 260, "it is not here, as in courts of common law, that the bond must be good in whole or not at all. So far as the money was properly advanced, it may be held to give a valid lien, and be dismissed as to the rest." The district court disallowed the premium upon the bond, but decreed for the principal, with ordinary interest. It appears that the repairs, to a considerable extent, were in excess of the necessities of the ship, one item being the entire new coppering of the ship. The bond can only be allowed to stand for such supplies and repairs as a master could properly order.

The decree of the district court must be reversed, with costs of the appeal, and a decree is ordered for the libelant for such sum as may be found due by a commissioner to whom it is referred to ascertain and report the amount due.