· JOHN H. BETSINGER, APPELLANT, *v.* JOSEPH K. SCHUYLER, TREASURER, ETC., RESPONDENT.*

*Provision in a lease vesting the title to the products of a farm in·the lessor, and pro-*
*hibiting the lessee from selling or disposing of them until the rent is paid—held to be*
*a chattel mortgage and, if not filed, void as to subsequent mortgagees in good faith.*

On January 1, 1877, George Clarke demised to one Sarah Evans, for the term of four years, a farm situated in the city of Rome by a written lease, reserving an annual rent of $350, payable in advance on the first day of April, in each year, and containing a clause providing "that the party of the second part shall and will, during the continuance of the term, feed out upon said premises all hay, straw, cornstalks and fodder that may be raised or produced on said premises, or any part thereof; * * * that all the products of the farm herein demised, and of the live stock stipulated to be kept thereon, that shall be raised or made thereon in each year during the continuance of the term, shall be and remain the property of the party of the first part * * * until the rent of such year shall have been fully paid, and that the party of the second part * * * shall have no right to sell or dispose of any such products, but shall hold and possess

---

* See *Smith* v. *Taber* (*ante*, p. 312). [REP.

the same simply as the agent of the party of the first part, * * * and not otherwise, until such rent shall have been fully paid."

*Held,* that this provision was, in effect, a chattel mortgage; and that as the lease had not been filed in the town clerk's office it was void as to subsequent mortgagees in good faith. (FOLLETT, J., dissenting.)

APPEAL from a judgment in favor of the defendant, entered in Oneida county upon a verdict directed by the court, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

On the 1st of January, 1877, George Clarke leased to Sarah Evans a farm situate in the city of Rome, N. Y. The lease was for four years, from April 1, 1877 The annual rent reserved was the sum of $350, which was payable in advance on the first day of April in each year. This lease contained the following provisions: " That the party of the second part shall and will during the continuance of the term, feed out upon said premises all hay, straw, cornstalks and fodder that may be raised or produced on said premises or any part thereof; * * * that all the products of the farm herein demised, and of the live stock stipulated to be kept thereon, that shall be raised, or made thereon in each year during the continuance of the term, shall be and remain the property of the party of the first part * * * until the rent of such year shall have been fully paid; and that the party of the second part * * * shall have no right to sell or dispose of any such products, but shall hold and possess the same simply as the agent of the party of the first part * * * and not otherwise until such rent shall have been fully paid." The demised premises were occupied by the lessee named and her son, Ebb Martin, until September 22, 1883, when the son left the country and the lessee surrendered the possession of the premises to the lessor. There was no other lease between the parties. After the expiration of the four years provided by the lease the lessee continued in possession under such lease.

On March 9, 1883, the plaintiff was an indorser on several notes made by said Martin, which amounted to about the sum of $800, and held a note against him for the sum of thirty-five dollars. On that day Martin and Mrs. Evans, the lessee of said farm, to secure such note and indorsements, made and executed a chattel mortgage to the plaintiff, upon seventeen cows and other property specified,

and on the "products of the dairy at cheese or butter factories where milk from the above cows shall be taken and made up during the season of 1883 ; and all the hay and fodder now on premises occupied by said Evans and Martin." This mortgage was duly filed in the proper clerk's office on the same day. The lease above-mentioned was never filed. Before taking this chattel mortgage the plaintiff examined the proper clerk's office to ascertain if there was any lien on the property mortgaged. The consideration for a part of the notes secured by plaintiff's chattel mortgage was the purchase-price of the cows. The cows were purchased by Martin. On May 29, 1883, the plaintiff notified the defendant who was the treasurer of the cheese factory where the milk from the mortaged cows was taken, that he had a mortgage on the milk at the factory when delivered, and notified him not to pay anyone for the same, without an order from him. On September 22, 1883, Mrs. Evans gave Clarke a bill of sale which purported to sell and assign, among other things, " the milk of the cows and all my interest at the cheese factory and all debts due me of every name." The defendant received for cheese which was manufactured from the milk of these cows before September 22, 1883, the sum of $146.02. The milk was delivered at the factory in Martin's name.

On November twenty-sixth, the plaintiff demanded the proceeds of said milk or cheese of the defendant, who declined to pay the same. On December fifth, after this suit was commenced, the defendant paid such proceeds to Clarke. The rent due Clarke was not fully paid, nor was the liability for which such chattel mortgage was given to plaintiff fully paid or discharged. This action was brought to recover the proceeds of said milk or cheese to apply on the plaintiff's mortgage. On the trial the court held that the milk from the cows on such farm when it came into existence was the property of Clarke, and directed a verdict for the defendant

*T. E. Watters,* for the appellant.

*D. T. Searle,* for the respondent.

MARTIN, J.:

The plaintiff's mortgage was executed by both Martin and Mrs. Evans, so that whatever rights the plaintiff could acquire through a chattel mortgage he possesses. Could the products of this dairy be

mortgaged? They were produced from property which the mortgagors owned and upon premises leased by them. The property mortgaged was potentially theirs, it was the subject of sale and might be mortgaged. (*Van Hoozer* v. *Cory*, 34 Barb., 9 ; *Conderman* v. *Smith*, 41 id., 406.) Therefore, unless Clarke had acquired some right to the property mortgaged which was paramount to the plaintiff's, the plaintiff was entitled to recover. Clarke acquired no right under his bill of sale which was superior to the plaintiff's. He could acquire no better or greater rights than the mortgagors possessed when it was given. Their rights were then subject to the plaintiff's mortgage. Hence, if Clarke had any superior right to this property it was secured to him by the provisions of his lease giving him a lien on such products.

The provisions in the lease between Clarke and Mrs. Evans, by which a lien upon such products was sought to be given, was merely a provision for the security of the rent and was necessarily in the nature of a chattel mortgage. (*Johnson* v. *Crofoot*, 53 Barb., 574 ; see, also, *McCaffrey* v. *Woodin*, 65 N. Y., 459 ; *Steffin* v. *Steffin*, 4 Civ. Pro. R., 187; *Thomas* v. *Bacon*, 34 Hun, 88 ; *Hawkins* v. *Giles*, 45 Hun, 318 ; *Yenni* v. *McNamee*, 45 N. Y., 615.) The fact that the products in question were from cows to which Clarke had no title, and that the contract between the parties was a lease of the land only, for a specified money rent, render this case clearly distinguishable from those cited by the defendant. The whole effect and object of the provisions in the lease was to transfer the title of the products of the dairy to Clarke as security for the payment of the rent. He was to acquire the title for no other purpose, and was to retain it only until the rent was paid. We think it was in effect a chattel mortgage and must be treated as such.

Regarding the provisions in this lease as a mortgage, and not having been filed, it was void as to subsequent mortgagees in good faith. The plaintiff was such a mortgagee. He had no notice of Clarke's lien, and the mortgage was founded on a good consideration. It was not given to secure a pre-existing debt ; it was given to secure a note made on the same day, and also to secure the plaintiff for his indorsement of certain other notes. When the mortgage was given his liability had not become fixed, subsequently he was charged as such indorser and was obliged to pay the amount secured by the indorsed notes.

Moreover, the title to the cows that produced the milk from which this cheese was made, never vested in Mrs. Evans. It was in Martin, he owning the cows, was entitled to the products from them. He was not a party to the lease. How this lease could transfer the title of this milk or cheese from Martin to Clarke, we are unable to understand. We do not think Clarke had any right to the products from these cows that was superior to the plaintiff's.

These considerations lead to the conclusion that the court erred in directing a verdict for the defendant. For that error the judgment and order appealed from should be reversed with costs to abide the event.

HARDIN, P. J., concurred; FOLLETT, J., dissenting.

FOLLETT, J. (dissenting):

The title to the products of the leased farm vested in the lessor, subject to be divested by the performance by the lessee of her covenants. (*Andrew* v. *Newcomb*, 32 N. Y., 417; *Van Hoozer* v. *Cory*, 34 Barb., 10; Benj. on Sales [Corbin's ed.], § 78.) The clause quoted from the lease is not, in legal effect, a chattel mortgage. A chattel mortgage is an instrument whereby the owner of personal chattels transfers the title to them to another (a mortgagee), as security for the payment of a debt, or for the performance of an obligation, with a condition, that upon payment or performance, the title shall revest in the original owner (the mortgagor); but if the debt is not paid, or the obligation is not performed, the title becomes absolute in law in the mortgagee, though redeemable in equity. (Jones Chat. Mort., § 1; Thomas on Mort., 427; Overton on Liens, § 481; *Nichols* v. *Mead*, 2 Lans., 222, 225; *Butler* v. *Miller*, 1 N. Y., 496, 500.) The lessee never having acquired title to this property, the plaintiff acquired no title to it under his chattel mortgage. *Hawkins* v. *Giles* (45 Hun, 318), and cases there cited, are not in point. In the case last cited there was no covenant that the title to the products of the farm should be and remain in the lessor; but the covenant was that the lessee should feed the hay upon the farm; and the question was, which had the title. It was held, upon the authority of the preceding cases, that the title was in the lessee. The judgment should be affirmed, with costs.

Judgment and order reversed, and a new trial order, with costs to abide the event.