## SUPREME COURT — APPELLATE DIVISION — THIRD DEPARTMENT.

### March 7, 1917.

## THE PEOPLE v. JOHN E. SCUDDER.

(177 App. Div. 225.)

LARCENY *—CONVERSION OF PROPERTY BY BAILEE—PROOF NECESSARY TO CONVICTION—DISTINCTION BETWEEN PLEDGE OR BAILMENT AND CHATTEL MORTGAGE—ASSIGNMENT OF STOCK AS SECURITY FOR DEBT WITH POWER TO TRANSFER SAME ON DEFAULT OF ASSIGNOR—WHEN MORTGAGEE TRANSFERRING STOCK TO HIMSELF AFTER DEFAULT NOT GUILTY OF LARCENY—EVIDENCE—NOTICE OF INTENTION TO TRANSFER STOCK.

In order to justify a conviction for a violation of subdivision 2 of section 1290 of the Penal Law which makes it larceny for a bailee of property to appropriate the same to his own use or to that of any person other than the true owner, it must appear, *first*, that the defendant has the property in his possession, custody or control as bailee or pledgee, and, *second*, that the defendant intended to deprive or defraud the owner of the property or of the use and benefit thereof, or to appropriate the same to his own use or to that of some other person.

A written instrument which in effect transferred specified shares of stock to the defendant and stated that the assignment was made as collateral security for the payment of any and all indebtedness of the assignor to the assignee now existing or which may hereafter arise, and which expressly empowered the defendant as assignee to sign the assignor's name to the certificates and transfer the same on the stock books of the corporation, as may be necessary to protect the assignee's interest in the case of default in payment of any of the assignor's obligations, did not make the assignee a bailee or pledgee of the stock, but, on the contrary, was in the nature of a chattel mortgage.

Hence, the assignee cannot be convicted of a violation of subdivision 2 of section 1290 of the Penal Law because after a default in payment by the assignor he had the security transferred to his own name on the books of the corporation.

---

* See Notes, Vol. 1, p. 355; 28, p. 180.

A pledge differs from a chattel mortgage in that it generally does not pass title to the thing pledged, but gives only a lien thereon, while the debtor retains the general property. On the contrary, a chattel mortgage is more than a mere security in that it is in the nature of a conditional sale which operates to transfer title to the mortgagee to be defeated only by a full performance of the conditions imposed on the mortgagor.

As under the instrument aforesaid, legal title to the stock vested in the defendant when the assignor failed to pay his obligations, the defendant cannot be convicted of larceny, for he could not steal his own property from himself.

Moreover, even if the written contract be deemed to constitute a pledge rather than a mortgage the defendant cannot be found guilty of larceny under section 1290 of the Penal Law, for the instrument in express terms authorized him to transfer the stock to himself on default in payment by the assignor.

Moreover, as section 1306 of the Penal Law provides that it is a defense to an indictment for larceny that the property was appropriated openly and avowedly under a claim of title preferred in good faith, there can be no conviction where it appeared that the defendant did not intend feloniously to defraud or deprive the assignor of the stock but had the same transferred to himself openly and avowedly and pursuant to the power to do so created by the assignor.

*It seems,* that in such action it was error to reject evidence to the effect that the defendant notified his assignor that if the overdue obligations were not paid he would sell the stock and to reject testimony as to his intention in disposing thereof.

APPEAL by the defendant, John E. Scudder, from a judgment of the County Court of Delaware county, rendered against him on the 26th day of June, 1916, convicting him of the crime of grand larceny in the first degree.

*Alexander Neish* and *Lynn J. Arnold,* for the appellant.

*Hamilton J. Hewitt, District Attorney,* and *Charles R. O'Connor,* for the respondent.

SEWELL, J.:

The defendant was indicted under the second subdivision of section 1290 of the Penal Law, as being in possession, custody

and control as bailee and pledgee of two certificates for .five shares of the stock of the First National Bank of Griffin Corners, of the value of $750, the property of one Harold O. Judd, and having on the 8th day of January, 1916, feloniously appropriated the certificates to his own use, by transferring the same upon the books of the bank to one Fred D. Cure, with intent to deprive and defraud the said Harold O. Judd of the same.

It is apparent that under this indictment two essential elements must appear to justify conviction: *First,* it must appear that the defendant had the certificates in his possession, custody or control, as bailee or pledgee of Judd; and, *second,* it must appear that the defendant intended to deprive or defraud Judd of the certificates, or of the use and benefit thereof, or to appropriate the same to his own use, or that of some other person.

I am of opinion that the evidence in this case did not warrant the conclusion that the defendant had the certificates of stock in his possession, custody or control, as the bailee or pledgee of Judd, or of any other person.   The only evidence on that subject was a written instrument bearing date the 28th day of May, 1914, executed by Judd to the defendant, under which it was conceded that the defendant held and disposed of the certificates.   The instrument was as follows:

" This instrument, made this 28th day of May, 1914, Between Harold O. Judd, of Griffin Corners, Delaware County, New York, of the first part, and John E. Scudder, of the same place, of the second part.

" *Witnesseth,* That the said party of the first part, for a good and valuable consideration to him in hand paid by the party of the second part, has sold, assigned, transferred and conveyed and does hereby sell, assign, transfer and convey to the party of the second part a certain certificate No. 135 of the Capital Stock of the First National Bank of Griffin Corners, N. Y., for two shares of the Capital Stock of said Bank; Also a certain certificate No. 134 of the capital stock of the First

National Bank of Griffin Corners, N. Y., for three shares of the Capital Stock of said Bank.

" This assignment is made as a continuing and collateral security for the payment of any and all indebtedness of the party of the first part, now existing or which may hereafter arise by reason of notes, checks, drafts or other obligations made or endorsed by the party of the first part, now or hereafter held, owned, discounted, endorsed by or due to the party of the second part hereto and for the payment of all indebtedness of the party of the first part to the party of the second part, now existing or which may hereafter arise.

"And I further appoint said John E. Scudder my attorney-in-fact to sign my name to said certificates and make such transfer on the stock books of said Bank as may be necessary to protect his interest in case of default in the payment of any of my said obligations.

" *In Witness Whereof,* I have hereunto set my hand and seal the day and year first above written.

" HAROLD O. JUDD. [L. S.]

I am unable to discover any principle upon which the defendant can be deemed to have been a pledgee or bailee under the terms of this instrument. It seems to me to be obvious that it was a mortgage, not a technical pledge.

It is in the form in which chattel mortgages are usually drawn. It has all the attributes of a mortgage and none of a pledge, as distinguished from a mortgage. It contains words of sale. It sells, assigns, transfers and conveys the certificates, by words in the present tense, and the terms of the instrument clearly imply that it was intended that a present interest should pass. It does not state the sum of money for which it is given as a security, but it does state that it is given to secure the payment of certain notes and other obligations, and declares what result shall follow upon default of Judd to pay any of the debts when due.

A pledge differs from a chattel mortgage in that it does not generally pass title to the thing pledged, but gives only a lien to the creditors while the debtor retains the general property. (Jones Pledges, § 3.) "A mortgage of goods is a pledge and more; for it is an absolute pledge to become an absolute interest, if not redeemed at the specified time. After the condition forfeited, the mortgagee has an absolute interest in the thing mortgaged; whereas a pawnee has but a special property in the goods to detain them for his security." (Brown v. Bement, 8 Johns. 96; Tremaine v. Mortimer, 128 N. Y. 1.)

A chattel mortgage is something more than a mere security. It is a conditional sale of the thing mortgaged and operates to transfer the legal title to the mortgagee to be defeated only by a full performance of the condition. Nothing short of actual payment before a foreclosure or sale can revest the legal title in the mortgagor. Upon breach of the condition the mortgagee may, so far as the legal rights of the parties are concerned, treat it as his own. The mortgagor has but the equitable right of redemption. (Butler v. Miller, 1 N. Y. 496; Hill v. Beebe, 13 id. 565; Kimball v. F. & M. National Bank, 138 id. 504; Streeter v. Ward, 12 N. Y. St. Repr. 333.)

Jones in his work on Chattel Mortgages (2d ed.), on page 2, says: "Any words which serve to transfer the property as security for a debt or obligation of any kind, are sufficient to constitute an informal mortgage, which will still be a mortgage at law. Whatever language may be used, if it shows that the parties intended a sale of chattels as security, the instrument will be construed to be a mortgage."

In the case of Smith v. Beattie (31 N. Y. 542) it was held that a bill of sale, absolute upon its face, transferring property to be held as security for the payment of a debt due the vendee, is in character and effect a mortgage and is to be treated as such.

In Parshall v. Eggert (54 N. Y. 23) a mortgage of personal property is defined to be a present transfer of the title of the

property mortgaged, subject to be defeated on payment of the sum or instrument it is given to secure.

In Blake v. Corbett (120 N. Y. 327) the instrument under consideration was in form a bill of sale of personal property with a provision that the property should remain in the possession of the vendor for the period of eight months, and if during that period the indebtedness should be paid the conveyance should be null and void. It was held that the instrument contained all the essentials of a chattel mortgage. (See, also, McCaffrey v. Woodin, 65 N. Y. 465; Bragelman v. Dane, 69 id. 69; Farmers & Mechanics' Nat. Bank of Buffalo v. Lang, 87 id. 209; Siedenbach v. Riley, 111 id. 560; Susman v. Whyard, 149 id. 127.)

The language of the instrument in question is definite and certain. Its meaning is not obscure. In clear and concise terms it gives the title to the defendant and gives him the right to dispose of it in case of a default. The authorities cited very clearly show that the agreement constituted the defendant a mortgagee of the stock, and operated to transfer the legal title to him, to be defeated only by a due performance of the conditions before breach thereof.

Not only was there no evidence from which a bailment or pledge of the stock could be inferred, but it appeared without contradiction that at the time the defendant appropriated it Judd had not performed the conditions of the agreement in that two notes, one for $50 and one for $2,075, which the mortgage was given to secure, were unpaid and had been due for considerable time prior to January 8, 1916. Under such circumstances it is apparent that the legal title to the stock was vested in the defendant at the time of the act complained of, and of course he could not have stolen it from himself.

If the instrument in question was not a chattel mortgage and should be regarded merely as a written contract of pledge, so that the defendant was not absolved because he had the legal

title to the stock, it is clear that he was not guilty of larceny under the provision of section 1290 of the Penal Law.

The appropriation of property held by a bailee, or a person authorized by agreement to hold or have the possession, custody or control of property, does not constitute larceny unless the appropriation was an unauthorized or illegal act. It is the *animo furandi* which creates the crime. The intention to make a wrongful appropriation as contradistinguished from one made with the consent of the owner. Not only was there no evidence from which a wrongful appropriation of the stock could be inferred, but the instrument under which it was held, in express terms, authorized the defendant to transfer and appropriate the shares of stock upon default in the payment of any of the debt or obligation mentioned, in the manner in which it was done by the defendant. I have searched the record in vain to find a particle of evidence tending to show that the authority to fill up the blank assignment on the back of the certificates and to cause them to be transferred on the books of the bank was revoked or modified prior to the transfer complained of, and the evidence, taken as a whole, negatives such a conclusion. It is clear, I think, that by force of the agreement, entered into between Judd and the defendant, the defendant was legally entitled to fill up the blank assignment and to do anything necessary to carry into effect the expressed intention of the parties.

There is another reason for the conclusion that the defendant was not guilty of the crime of larceny. Section 1306 of the Penal Law provides that upon an indictment for larceny " it is a sufficient defense that the property was appropriated openly and avowedly, under a claim of title preferred in good faith, even though such claim is untenable." Without entering into detail into the circumstances disclosed by the record, it is sufficient to say that it appeared by the evidence that the stock was appropriated by the defendant openly and avowedly, and pur-

suant to a power or license to sell, granted by Judd, and that there was no evidence from which a jury would have the right to find that the defendant feloniously intended to defraud or deprive Judd of the stock. On the contrary, the only inference which can fairly be drawn from the facts and circumstances is that the defendant believed he had the right to dispose of it to satisfy the notes it was intended to secure.

To find that the act of the defendant in disposing of the stock was a larceny, it is necessary not only to override the provisions of the agreement, which clearly and with certainty warranted that act, but to ignore facts and circumstances which negative the existence of a criminal intent, or at least are consistent with innocence.

There were several rulings upon questions of evidence which were excepted to, and which, I think, were errors. The court rejected evidence offered by the defendant to show that upon one or more occasions, when Judd was informed that the $2,075 note was due and must be paid, or it would be given to an attorney to collect, that Judd told the defendant that he could not pay the note, and to sell the stock and pay it. The court also refused to allow the defendant to testify to his intention in disposing of the stock.

It cannot be doubted that it was competent for the defendant to testify to these facts to disprove the charge made against him. We do not, however, care to rest the decision of the case upon these errors, as we are of the opinion that the testimony as a whole did not warrant the conviction of the defendant.

It follows that the judgment of the County Court convicting the defendant of the crime charged must be reversed.

All concurred.

Judgment of conviction reversed, and the court directs that if the defendant be in custody that he be discharged; if not, that his bail be exonerated or the money deposited in lieu thereof be returned.