HERRMANN v. CENTRAL CAR TRUST CO. et al.

(Circuit Court of Appeals, Second Circuit. April 3, 1900.)

No. 106.

PLEDGE—CONSTRUCTION OF CONTRACT—SETTLEMENT OF DEBT BY PLEDGEE.

Where bonds were transferred by the owner as security for payment by a railroad company of the purchase price of rolling stock, the instrument by which the transfer was made providing that, in case of default, the rolling stock should be first sold, and the proceeds applied on the debt, and the bonds should be held as secondary security to make good any deficiency remaining, the contract shows that the intent of the parties was to constitute a pledge, and not a mortgage, of the bonds, and the pledgee lost all right to sell the same by making a settlement by which it took back the rolling stock, and released the railroad company from further liability.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Howard A. Taylor, for appellants.

F. K. Pendleton, for appellee.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge.   In the year 1890, the Birmingham, Sheffield & Tennessee Railway Company, hereinafter called the "Railway Company," was in existence in Alabama, having been built by the Sheffield & Birmingham Construction Company, hereinafter called the "Construction Company," which owned substantially all the stock and bonds of the Railway Company.   On January 10, 1890, the Railway Company entered into a contract with the Central Car Trust Company, another corporation, for the purchase of a quantity of cars and equipment, by which contract the Car Trust Company agreed to sell this rolling stock to the Railway Company for a sum payable in specified installments, the title to remain in the Car Trust Company until the whole amount should be paid; the contract being in the form of a lease, and the promises in regard to installments being in the form of lease warrants.   Upon default in the payment of any installment, the Car Trust Company could take possession of the equipment, sell it, and apply the avails in payment of all the installments due or not due.   On the same day the Construction Company entered into a written contract with the Car Trust Company, by which the former delivered to the latter 75 mortgage bonds of the Railway Company, of the par value of $1,000 each, as a security for the fulfillment of the Railway Company's contract.   The terms of the Construction Company's contract which are now important are as follows:

"First. The Construction Company, in consideration of the premises and the sum of one dollar ($1) to it in hand paid by the Car Trust Company, the receipt of which is hereby acknowledged, has sold, assigned, and transferred, and herewith delivers to the Car Trust Company seventy thousand dollars ($70,000) of the first mortgage five per cent. bonds of the Birmingham, Sheffield & Tennessee River Railway Company, to be held as collateral security for the payment of the said seventy-two (72) lease warrants in addition to the security provided by the terms of said contract of lease or conditional sale. If there is a default in the payment of any or all of the said lease warrants, the aforesaid rolling stock and equipment will be first sold to make good the said default, and the bonds hereby assigned and transferred shall be held as secondary security to make good any deficiency that may result after the said equipment has been realized upon.   Second. The Car Trust Company hereby acknowledges the receipt of said seventy thousand dollars ($70,000) of the first mortgage bonds to be held under the terms of this contract."

It was further provided that, upon payment of a specified number of warrants or of payment of warrants before maturity, the Car Trust Company would surrender and deliver to the Construction Company a specified amount of bonds.   The Railway Company defaulted in the payment of interest upon its mortgage bonds, a suit for foreclosure was brought in the United States circuit court for the Northern division of the Northern district of Alabama by the trustee of the mortgage, and E. A. Hopkins, who was president of the Con-

struction and Railway Companies, was appointed receiver of the latter company. The Car Trust Company subsequently filed a petition in the foreclosure suit, alleging default in the payment of the installments provided by the car trust contract already mentioned, and three other contracts of similar character; whereupon a decree was entered on December 10, 1894, as follows:

"And the Central Car Trust Company, petitioner, offering to take back the cars and railway equipments sold and delivered under the terms of the aforesaid four contracts, in full payment and satisfaction, for the amounts due thereon, as set forth above, excepting and reserving only a claim against the Birmingham, Sheffield & Tennessee River Railway Company, defendant, and E. A. Hopkins, receiver, for a fair rental for the said cars and railway equipment, during the period of six months prior to the appointment of the receiver, and during the receivership, which claim is asserted by the Central Car Trust Company to be a valid prior claim, and entitled to a lien upon the property of the defendant company in the hands of the receiver prior to the mortgage of the Knickerbocker Trust Company, trustee, and the other parties interested herein, represented as aforesaid, accepting and agreeing to said offer, upon the understanding and agreement that all matters regarding the rights of the Central Car Trust Company to a rental of the said cars and equipments during the period named, to wit, six months prior to the receivership, and the status of said claim shall be reserved for future consideration, it is ordered, adjudged, and decreed, that the receiver be, and he hereby is, instructed and directed, upon the execution and filing by the Central Car Trust Company, with the papers of this cause, of a formal release of the amounts due it as rental or purchase money for the cars or railway equipments, covered by the aforesaid four contracts as set forth above, to deliver to the Central Car Trust Company, upon its request, the aforesaid cars and railway equipment."

The Car Trust Company, in pursuance of said decree, on November 26, 1895, executed and filed its release to the railway company "from any and all claims for rental and purchase money covered by the aforesaid four contracts," excepting as in the decree already mentioned excepted, and all the equipment in the hands of the receiver was delivered to the Car Trust Company, and was never sold under the agreements of January 10, 1890. Subsequently, this reserved claim was ascertained and paid in money by order of court out of the proceeds of sale in the foreclosure suit. The Construction Company was not a party to any of these proceedings. In 1895 a reorganization committee was appointed, which took steps to organize a new railroad company. The Manhattan Trust Company was appointed depository of the bonds, with which company the $70,000 bonds already mentioned were deposited by the Car Trust Company in May, 1895, through E. W. Clark & Co., of Philadelphia, its agents. The decree of foreclosure and sale was entered on July 5, 1895, and amended in September, 1895; the property, not including the rolling stock of the Car Trust Company, was sold to J. Kennedy Tod and James G. Leiper, two of the members of the reorganization committee; the sale was confirmed in October, 1895; and a deed was made to their assignee, the Northern Alabama Railway Company, on November 29, 1895. The Car Trust Company, on November 19, 1895, without notice to the Construction Company, sold at auction at Philadelphia the receipts for the $70,000 of bonds to E. W. Clark & Co. for $3,500. E. W. Clark was the president of the Car Trust Company. The Northern Alabama Railway is the assignee of E. W.

Clark & Co. and of the Car Trust Company, and each of them knew all the foregoing facts. Upon the ascertainment of the amount due on the reserved claims, which was a prior lien on the property in the hands of the receivers, this $3,500 was credited to the Car Trust Company by the Northern Alabama Railway Company. The complainant, Herrmann, as assignee of a claim against the Construction Company, recovered a judgment against it in the supreme court of the state of New York on February 26, 1896, by default, for $42,566.08. The Construction Company is a New Jersey corporation, and was not doing business in New York, and service of process was made upon its president in New York. The plaintiff brought, on December 3, 1897, a suit upon this judgment, the complainant also alleging the cause of action upon which the first judgment was founded, in the supreme court of the state of New York, in which the defendant also appeared, by authority of its president, and, by consent, judgment was entered, on January 11, 1898, against it for $47,372.01. Upon these judgments executions were issued, and were severally returned unsatisfied. The present suits are two judgment creditors' bills in equity, originally brought in the supreme court of New York against the Construction Company and other defendants upon these two judgments, to reach the certificates given in lieu of the bonds for $70,000, and were removed to the circuit court for the Southern district of New York, in which suits the Alabama Railway Company became a party defendant. The two causes were heard together, were ordered to be consolidated, and one decree was entered that the certificates should be applied to the payment and satisfaction of the complainants' judgments. 95 Fed. 55. From this decree divers defendants appealed, but the Northern Alabama Railway Company and Tod and Leiper are the parties defendant really interested in the appeal.

The contention of the appellants is that the contract of 1890 between the Construction Company and the Car Trust Company was a mortgage, by which the legal title to the 70 bonds at once vested in the Car Trust Company, not to revert to the Construction Company except upon payment of the lease warrants as they, respectively, matured; and that, upon default of payment of any warrant, the title of the Car Trust Company became absolute at law, subject only to an intentional waiver on its part, or to a decree in equity providing for redemption by the mortgagor. The complainant asserts the contract was a pledge by which the Car Trust Company had only the right of possession, and not the title; that the lien of the Car Trust Company was released by its subsequent agreement, its acceptance of the equipment, and discharge of the Railway Company from its liability under the contract. If the contract was a mortgage, the legal title became vested in the mortgagee, and being a mortgage of personal property, accompanied with possession, the theory of the appellants is that the mortgagee, after default, has an absolute title to the chattel, and has "a right to keep it and account for its market value, or to sell it at auction, and credit the net proceeds upon his debt." Craig v. Tappen, 2 Sandf. Ch. 78.

In view of the facts in the case in regard to the discharge of the

debt against the Railway Company by the Car Trust Company, it may not be absolutely necessary to ascertain whether the contract of January 10, 1890, was a mortgage or a pledge, yet it is important to do so, because it is only upon the theory that the contract was a mortgage that the appellants claim title to the certificates which are a substitute for the bonds. It was not in the form of a mortgage, for it contained no clause of defeasance; but the appellants say that the title was conveyed because the words, "sell, assign, and transfer," were used. That is true, and the words ordinarily contained in contracts of pledge, viz. "to be held as security," and the promise that upon payment at maturity the Car Trust Company will "deliver and surrender," instead of "reconvey," the security were also used. The question of mortgage or pledge cannot be determined by selecting two or three words which indicate a conveyance of title, and disregarding other language which is also important; for the question is to be determined by the intent of the parties, as gathered from the whole instrument. Thompson v. Dolliver, 132 Mass. 103. This intent is disclosed with clearness by the entire contract, which provides that the rolling stock must first be resorted to for payment, and that the bonds shall be held as security for any deficiency after the sale of the equipment. An immediate disposition of the bonds upon default is virtually forbidden, and their retention as security for an ultimate deficiency is compelled. The plan upon which the contract was made was the postponement of power in the Car Trust Company to resort to the bonds until it had retaken and sold the equipment. Meanwhile, they were to be a security for the deficiency after the avails of the sale had been applied upon the debt, and whether they would be needed could not be ascertained until after a sale or an agreement of all the parties. While, under this plan, the parties could have made the contract in the form of a mortgage, with a defeasance, yet, in the absence of the customary peculiarities of a mortgage, their obvious intent was to give the Car Trust Company the possession of the bonds by way of pledge, as a security for an ultimate deficiency, which was to be determined, not upon default in payment of the lease warrants, but after a sale of the rolling stock, and with the obligation upon the part of the Car Trust Company, in case of fulfillment by the Railway Company of its contract of purchase, to surrender and deliver the bonds to the Construction Company.

In this condition of the agreements between the three companies, the Car Trust Company voluntarily and of its own motion took possession of the equipment, put an end to the conditional sale or lease, released the Railway Company from any claim except its claim against the receiver for the use of the property, and the bonds which were a security for the ultimate amount due by the Railway Company upon its agreement to purchase were freed from the lien. The Car Trust Company could not enforce a lien for the fulfillment of the Railway Company's contract, for it had discharged the debt under that contract. Crompton v. Beach, 62 Conn. 25, 25 Atl. 446, 18 L. R. A. 187. The fact that nothing was said in the decree of December 10, 1894, in regard to the bonds, is not significant of an intent upon the part of the Car Trust Company to retain a lien upon them, because the

Construction Company was not a party to the decree. The auction sale to E. W. Clark and the sale by him to the Alabama Railway Company were made to persons who took the bonds with full knowledge of the weakness of the Car Trust Company's title, and the credit of $3,500 which the Alabama Railway Company undertook to give to the Car Trust Company was a credit which had no effect upon the rights of the Construction Company. If the original contract was a pledge, the lien cannot be regarded as a continuous one, in view of the voluntary action of the Car Trust Company with respect to its conditional sale of the rolling stock, and, if it was a mortgage, the agreement to take back the equipment, the acceptance of the equipment, and the discharge which was given thereupon, it is by no means clear that the mortgagee's claim upon the bonds was not also extinguished. Charter v. Stevens, 3 Denio, 33. We perceive no adequate foundation for the position that the second judgment against the Construction Company is defective. The decree of the circuit court is affirmed, with costs.