## VOLUME 108,

AND

# New York State Reporter,

## VOLUME 142.

(123 App. Div. 316.)

### KRAMER v. HAEGER STORAGE WAREHOUSE CO.

(Supreme Court, Appellate Division, First Department. January 10, 1908.)

1. WAREHOUSEMEN—DELIVERY TO THIRD PERSON—LIABILITY.
   Where one gives a receipt to the effect that she has received $220 as a loan on goods stored by her in a warehouse, and between this (written in the handwriting of the pledgee) and the signature of the pledgor leaves a space in which the pledgee writes in the words, "and hereby made subject to the order of" the pledgee, the warehouseman is justified in acting on the order; and, having under it delivered the goods to the pledgee, the pledgor is barred by her negligence from recovering of it therefor.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Warehousemen, §§ 41–47.]

2. SAME.
   Where plaintiff received money from M. and delivered to him a nonnegotiable warehouse receipt, and with it a paper reciting receipt of the money as a loan on the goods in the warehouse, intending to thus pledge the goods, recovery cannot be had of the warehouseman for delivering the goods to M., on the loan not being paid.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Warehousemen, §§ 41–47.]

3. TROVER AND CONVERSION—DAMAGES—VALUE OF GOODS—SUFFICIENCY OF EVIDENCE.
   Evidence in an action for the conversion of goods held insufficient as to the value thereof to sustain the verdict.

4. TRIAL—IRRESPONSIVE ANSWER—MOTION TO STRIKE.
   Motion to strike an irresponsive answer may be made by either party, irrespective of who asked the question.

   108 N.Y.S.—1

Appeal from Trial Term.

Action by Carrie Kramer against the Haeger Storage Warehouse Company. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Charles D. O'Connell, for appellant.
Edward Wells, Jr., for respondent.

McLAUGHLIN, J. In May, 1904, the plaintiff stored in the defendant's warehouse certain household goods and received therefor a warehouse receipt, which was marked "nonnegotiable." In October following she applied to one Maxwell, who was the proprietor of the Standard Storage Warehouse, for a loan upon such goods, and on the 10th of that month he loaned her $200 for one week; she delivering to him as collateral security for the payment thereof the warehouse receipt, and also a receipt to the effect that she had received $220 as a loan on the goods. The plaintiff did not repay the loan at the time agreed, and some time between the 18th and 21st of October Maxwell removed the goods to his own warehouse, presenting to the defendant its warehouse receipt, and also the receipt signed by the plaintiff, which, in the form presented, stated that the plaintiff had received $220 as a loan upon the goods stored in the defendant's warehouse "and hereby made subject to the order of Charles M. Maxwell." On the 27th of October the plaintiff went to the defendant's warehouse to arrange for the removal of the goods, and was then informed that upon her order they had been delivered to Maxwell. She denied that she had given such order. In April, 1905, the goods, or substantially all of them, were sold at public auction for $596, and at the trial the auctioneer testified this was their fair and reasonable value. In February, 1906, this action was brought to recover the value of the goods, upon the ground that the defendant, by delivering them to Maxwell, was liable for a conversion. The jury rendered a verdict in her favor for the sum of $3,500, and from the judgment entered thereon, and an order denying a motion for a new trial, this appeal is taken.

The warehouse receipt given by the defendant to the plaintiff was in form nonnegotiable. One of its conditions was:

"Present this warehouse receipt and a written order when any goods are to be withdrawn. Goods will be delivered only upon receipt of a written order signed by the person in whose name they are stored."

The plaintiff testified that when she applied to Maxwell for the loan he demanded that the goods be stored in his warehouse, and that she declined to consent to such removal; that when she signed the receipt for the loan which he had written out the words "and hereby made subject to the order of Charles M. Maxwell" were not incorporated therein; and that thereafter she refused, on different occasions, to give him a written order for the removal of the goods to his ware-

house. A handwriting expert testified that the words above quoted were written some time after the body of the receipt was written, though he, of course, was unable to state whether such words were written before or after the receipt was signed. Maxwell testified that he wrote the whole of the receipt, except the signature, at the same time; but he subsequently admitted that the disputed words were written somewhat later than the other words were. But both he and the witness Ryan, who was present at the time, testified that the disputed words were written in the receipt before the plaintiff affixed her signature.

If it be assumed that the disputed words were written in the receipt after the plaintiff had signed and delivered it to Maxwell, then it must also be assumed that she left a blank space between her signature and the body of the receipt, which was in Maxwell's handwriting, sufficient to enable him to incorporate such words therein. She delivered to him the warehouse receipt, according to her own testimony, as collateral security for the payment of the loan, and he then asked her for an order directing the removal to his warehouse. By leaving this space in the body of the receipt, he was enabled to incorporate the disputed words and present to the defendant, not only its warehouse receipt, but also what purported to be a written order for the delivery of the goods. When this receipt was presented, there was no way in which the defendant, in the ordinary course of business, could have determined that the disputed words were not in the receipt when she signed it, and it was therefore justified in acting upon it. The receipt for the money and the order for the delivery of the goods were all in the same handwriting, and it is conceded the same was signed by the plaintiff. Under such circumstances the defendant was justified in acting upon the order and delivering the goods to Maxwell. Timbel v. Garfield National Bank (decided at the November term of this court and not yet officially reported) 106 N. Y. Supp. 497. The defendant was an innocent third party, and if a fraud were perpetrated it was by reason of the negligence of the plaintiff, and any loss resulting therefrom ought to be borne by her, instead of a party who relied upon the receipt signed by her.

But, aside from this, the plaintiff was not entitled to recover. A fair construction of all the evidence is to the effect that the goods were pledged by her to Maxwell as security for the loan made by him. The fact is not disputed that he loaned to her $200, for which she signed a receipt stating that the loan was made upon the goods in question, and she at the same time delivered to him her warehouse receipt. To constitute a valid pledge of personal property, there must be a delivery of the thing pledged to the pledgee; but what will amount to a delivery depends upon the circumstances of each particular case. Clark v. Costello, 79 Hun, 588, 29 N. Y. Supp. 937. The delivery of a bill of lading, though without indorsement, has been held a delivery of the property described therein. City Bank v. R., W. & O. R. R. Co., 44 N. Y. 136; Merchants' Bank v. U. R. R. & T. Co., 69 N. Y. 373. What the court said in disposing of the case last cited, with reference to an intent to pass title, is especially applicable here:

"It cannot be doubted that the very purpose in view was to pass the title, as no other way was provided for the payment of plaintiff's advances. * * * At most the intent here was a question of fact. * * * "

Therefore, if it be conceded that the disputed words were not in the receipt when it was signed and delivered, and that the warehouse receipt issued by the defendant was nonnegotiable, it nevertheless could not be held as a matter of law that in view of all the circumstances there was not a sufficient delivery of the goods to constitute a pledge and give to Maxwell the right of possession, at least when the loan was not repaid. It therefore seems to me the court erred in refusing to charge the jury, as requested, that:

"If they believe that on October 10th, when Mrs. Kramer, the plaintiff, received this $200 from Mr. Maxwell and delivered to him the original warehouse receipt, with a receipt for the money, that it was her intention then to pledge these goods, that the plaintiff is not entitled to recover."

The plaintiff's refusal, according to her own testimony, to give a written order for the removal of the goods, was on account of the damage they would sustain; and in this connection it is quite significant, as bearing upon the intention of the parties, that she admitted that Maxwell demanded possession of the warehouse receipt and that she delivered the same to him for the purpose of securing the loan. The legal effect of the transaction was to pledge the goods as security for the loan, and, if this be true, then, even though an order was not given for their delivery, it did not follow, as the court seemed to indicate in its charge, that the plantiff was entitled to recover. While a bailee may not ordinarily set up the rights of a third person against his bailor when sued for conversion, the right of a third person to whom the bailee has delivered the property may be considered as a defense. Western Transportation Co. v. Barber, 56 N. Y. 544. Here the plaintiff, by the delivery of the warehouse receipt and the other receipt which she gave, had clothed Maxwell with at least the indicia of title; and it was a question for the jury, in view of that fact, taken in connection with the other testimony bearing on the subject, to say whether she had not relinquished her interest therein until such loan had been paid, to the extent, at least, of enabling Maxwell, on her default, to take possession of the property. Driggs v. Dean, 167 N. Y. 121, 60 N. E. 336.

The judgment must also be reversed because the plantiff failed to establish by satisfactory evidence the value of the goods. The auctioneeer who sold them testified that they brought at public auction $596, which was their fair and reasonable value. The plaintiff testified that they originally cost much more, and that they had been in use in a boarding house for several years; but her testimony as to value is vague, indefinite, and unsatisfactory, and to such an extent that a verdict for $3,500 predicated thereon, in view of what the property sold for at public auction, cannot be permitted to stand.

In this connection it may not be out of place to call attention to an error which was committed at the trial, which necessitates a reversal of the judgment. During the plaintiff's examination she was asked the following question:

"Q. When you made the claim in your complaint of $5,000 for damages that you allege you suffered, how was that fixed? A. Damage; well, the damage would amount to a great deal more than that."

Defendant's counsel thereupon moved to strike out the answer as not responsive. The motion was denied, and an exception taken; the court saying:

"The only one who can object to an answer as being unresponsive is the one who propounds the question."

Any party to an action is entitled to have stricken out an answer which is not responsive to a question proposed, irrespective of whether he asked the question or not. This must be so; otherwise, it is not difficult to imagine how damaging and incompetent testimony could be given by a dishonest or trained witness.

Upon each of the grounds named, therefore, I am of the opinion this judgment should be reversed, and a new trial ordered, and in reaching this conclusion the provisions of chapter 326, p. 532, of the Laws of 1858, and chapter 608, p. 1775, of the Laws of 1902, have not escaped my attention. Neither of these statutes, as I read them, has any application to the facts here presented.

The judgment and order appealed from, therefore, must be reversed, and a new trial ordered, with costs to appellant to abide event.

INGRAHAM and CLARKE, JJ., concur. HOUGHTON, J., concurs on last ground only.

PATTERSON, P. J. I concur in the reversal of this judgment because of the want of satisfactory proof as to the value of the goods, and also because the court erred in refusing to charge the jury, as requested by the appellant, that if they believed it was the intention of the plaintiff to pledge the goods at the time she borrowed the money from the defendant she was not entitled to recover.

I think, under the evidence in the case and its peculiar circumstances, the defendant was entitled to this instruction.