---

In re CROSS.

(District Court, N. D. New York. September 5, 1917.)

1. CHATTEL MORTGAGES ☞8—PLEDGE OR MORTGAGE.

Construed together, a note given for a loan declaring that the maker has deposited or pledged as collateral security for its payment a certain number of cases of peas in storage at a certain warehouse, and authorizing a sale of the property if the note is not paid at maturity, and an instrument of same date stating that the maker assigns all his right, title, and interest in said peas on account of said loan, constitute a pledge and not a chattel mortgage.

2. PLEDGES ☞11—TRANSFER OF POSSESSION.

There is a sufficient transfer of possession of pledged cases of peas, in the warehouse of a third person, where the pledgee in writing notifies the warehouseman thereof, and requests him to recognize only releases signed by it, and he by written reply promises so to do.

In Bankruptcy. In the matter of John M. Cross, bankrupt. Claim of the City National Bank of Syracuse, as pledgee, for proceeds of goods, allowed.

This is a proceeding, on an agreed and stipulated state of facts, to determine the right and title to the sum of $3,028.40 as between Frank B. Hodges, trustee in bankruptcy, and the City Bank of Syracuse, now on deposit in the City National Bank, and which is the proceeds of the sale of certain cases

of peas, and which sale was made pursuant to an order of this court dated November 16, 1916, and which directed the deposit of such proceeds in a special fund in such bank to take the place of such peas, and which sale was made without prejudice to the rights of the parties claiming same; the lien of the claimant, the City Bank of Syracuse, if any, to attach to such proceeds. The facts appear in the opinion.

Costello, Burden, Cooney & Walters, of Syracuse, N. Y., for trustee.
Levi S. Chapman, of Syracuse, N. Y., for claimant.

RAY, District Judge. [1, 2] The claimant, City National Bank of Syracuse, N. Y., contends that, at the time of the bankruptcy of Cross, it held the cases of peas, the right to the proceeds of which is in question here, under a valid pledge of same, evidenced by writings, and accompanied by the necessary delivery, as collateral security for a loan of $2,500 cash, made to the bankrupt by said bank on the 4th day of October, 1916; while the trustee in bankruptcy contends that the transaction and writings constituted a chattel mortgage only, unaccompanied by immediate, or any, delivery of the property, and that, as the papers constituting the mortgage were not filed as required by the New York statute, same is void as to the trustee in bankruptcy and creditors, and that the trustee is entitled to the whole of the proceeds of such sale. The trustee also contends that, if the transaction between Cross and the bank was a pledge of the property or intended as such, there was no sufficient delivery of the property to make it valid or effectual as such. There is no question that the money was loaned by the bank.

The bankruptcy proceeding was instituted October 25, 1916, on which day Frank B. Hodges was duly appointed receiver of the bankrupt's estate, and on the 26th day of December, 1916, he was duly appointed and qualified as trustee. October 4, 1916, the City Bank of Syracuse loaned to John M. Cross, the now bankrupt, the sum of $2,500 cash, and took from him his promissory note reading as follows:

"$2,500.00                                    Syracuse, N. Y., Oct. 4, 1916.
"One month after date I promise to pay to the order of City Bank twenty-five hundred dollars for value received; payable at the City Bank of Syracuse, with use.
"I have deposited or pledged as collateral security for the payment of this note

| Corporation. | Issue. | Numbers. |

3,134 Doz. cans peas or 1,567 cases in storage at Cont. Can Co. Plant.

"The margin of collaterals hereunder shall always be kept good as at present, and at not less than 25 per cent., and in default thereof, this note shall immediately become and be payable on demand; and I hereby give to the holder hereof full power and authority to sell or collect at my expense all or any portion thereof, at any place, either in Syracuse, New York, or elsewhere, at public or private sale, or otherwise at holder's option, on the nonperformance of the above promise, and at any time thereafter, without advertising the same or otherwise giving me any notice. In case of sale thereof, public or private, the holder may purchase without being liable to account for more than the net proceeds of such sale, and any surplus arising in any manner from said collateral may be applied on any other indebtedness now or hereafter owing by me to said bank for which I am or may be liable in this manner.                                    John N. Cross."

And also another written paper signed by said Cross, which reads as follows:

"Continental Can Company.

"Syracuse, N. Y.

"John M. Cross Statement.

| 30 cases | #1 | Fancy | June peas. | | |
|---|---|---|---|---|---|
| 123 " | #2 | " | " | " | |
| 215 " | #3 | " | " | " | |
| 475 " | #4 | " | " | " | |
| 215 " | #3 | Med. | " | " | |
| 38 " | #2 | " | " | " | |
| 40 " | #1 | Fancy | " | " | |
| 147 " | #2 | " | " | " | |
| 73 " | #4 | " | " | " | |
| 215 " | #3 | " | " | " | |

"1567 cases (2 dozen to the case), or 3134 dozen @ $.95 per dozen, $2,977.30, less $1.00 per 1,000, label allowance, or 37,608 by $1.00. ...............  $37.61

$2,939.69

"Stored at the Continental Can Co., Cor. E. Washington St. and University Ave., Syracuse, N. Y., insured for $3,000.00.

"I hereby assign all my right, title, and interest in the above-described property on account of loan of $2,500.00 secured this day.

"Oct. 4, 1916.                                            John M. Cross."

On that day the cases of peas mentioned in said papers were stored in the warehouse of the Continental Can Company at Syracuse, N. Y., as the property of Cross, where they had been for some time. On the same day, and after loaning such money and taking such papers, the said bank, by its authorized officers, mailed to said Continental Can Company a letter reading as follows:

"October 4, 1916.

"Continental Can Co., Syracuse, N. Y.—Gentlemen: There has been assigned to this bank 1,567 cases of peas placed in storage with the Continental Can Company by John M. Cross. We hereby request that you recognize releases signed only by this bank for goods delivered. Kindly acknowledge receipt of this letter stating that you are complying with our request.

"Very truly yours,                     A. N. Ellis, Vice-president."

This was received by said Can Company, which on the 7th day of October, 1916, sent to the said City Bank a letter in reply, which it received, reading as follows:

"Continental Can Company.  Oct. 7, 1916.

"The City Bank, Syracuse, N. Y.—Gentlemen: In reply to your favor of the 4th inst., in reference to the 1,567 cases of peas stored in our warehouse, belonging to Mr. John M. Cross, beg to advise that we have taken out of this stock nineteen cases which Mr. Cross has sold to some of our people at this plant, leaving a balance of 1,548 cases now in storage. As requested by you, we will only recognize release signed by you for the removal of these goods.

"Yours very truly,                     Continental Can Company, Inc.,

"Arthur G. Chase, Secretary."

The said Can Company took out the 19 cases of peas mentioned in this letter, and the balance of such peas remained where they were in the storehouse of said Continental Can Company. The receiver, on his appointment, claimed the remaining 1,548 cases so in storage, and that same were not subject to any valid pledge or lien. So far as ap-

pears, there was no physical delivery or handling of said peas, or of any part of same, at the time said writings were signed and delivered to the bank, or at any time thereafter, until the Can Company removed its 19 cases, the others remaining as and where they had been until sold by the receiver under the order of the court.

The two papers executed and delivered by Cross to the bank clearly gave to it the right to take physical possession of and remove the cases of peas. Kramer v. Haeger S. W. Co., 123 App. Div. 316, 108 N. Y. Supp. 1. The letter and directions sent to the Continental Can Company was an exercise of dominion over such cases of peas, and notice of its right on the part of the bank to the warehousemen, but not a physical taking possession. The letter sent the bank by this Can Company was a recognition on its part of the rights of the bank in and to the peas, whatever they were, and constituted a promise to retain possession and control thereof for the bank; that is, hold for and subject to the orders of said bank. It was not an express promise, but constituted an implied promise, to do this, for it says, "As requested by you, we will only recognize releases signed by you for the removal of these goods" (peas). If, thereafter, the Can Company held for the bank for "possession and delivery may be made to and kept by an agent of the pledgee," the bank had possession. Jones on Collateral Securities (3d Ed.) § 23, p. 31. While the mere statement, oral or written, that property is pledged, accompanied by necessary possession, does not necessarily make the transaction a pledge, the real essence of the contract will be regarded and enforced. Moors v. Kidder, 106 N. Y. 32, 12 N. E. 818; Ward v. Sumner, 5 Pick. (Mass.) 59. In Jones on Collateral Securities (Pledges) (3d Ed.) § 13, p. 21, it is said:

"Contracts substantially the same in terms may be construed either as mortgages or pledges under different circumstances, according as the one security or the other will best effectuate the intentions of the parties, and subserve the purposes of justice."

In the next section, § 14, p. 21, the author says:

"The law favors the conclusion that a transaction is a pledge when there is doubt whether it is a pledge or a mortgage."

See Bank of British Columbia v. Marshall (C. C.) 11 Fed. 19.

The three essential elements of a valid contract of pledge are: (1) The possession of the pledged property must pass from the pledgor to the pledgee, or to some one for him; (2) the legal title to the property must remain in the pledgor; (3) the pledgee must have a lien on the property for the payment of a debt or the performance of an obligation due him by the pledgor or some third person.

In Christian v. Atlantic, etc., R. Co., 133 U. S. 233, 10 Sup. Ct. 260, 33 L. Ed. 589, the opinion of the court, per Mr. Justice Bradley, says:

"The ground on which it is contended that this may be done is that the property is affected by a pledge, and may therefore be dealt with in rem. But a pledge, in the legal sense, requires to be delivered to the pledgee. He must have the possession of it. He may then, in default of payment of the debt for which the thing is pledged, sell it for the purpose of raising the amount, by merely giving proper notice to the pledgor. In the case of stocks and other choses in action, the pledgee must have possession of the certificate or other

documentary title, with a transfer executed to himself, or in blank (unless payable to bearer), so as to give him the control and power of disposal of it. Such things are then called pledges, but more generally collaterals; and they may be used in the same manner as pledges properly so called. If there is no transfer attached to or accompanying the document, it is imperfect as a pledge, and requires a resort to a court of equity to give it effect. These propositions are so elementary that they hardly need a citation of authorities to support them. Reference may be made, however, to Story on Bailments, § 297, et seq.; Casey v. Cavaroc, 96 U. S. 467 [24 L. Ed. 779]."

When the property intended to be pledged is incapable of delivery, but the writing sufficiently describes it to make it capable of identification, and the pledge attempted is as security for the payment of certain notes, this is sufficient to create an equitable lien in favor of such pledgee which may be enforced in equity against general creditors. Chattanooga Nat. Bank v. Rome Iron Co. et al. (C. C.) 102 Fed. 755, 758; 3 Pom. Eq. Jur. § 1235. But here these cases of peas were capable of physical delivery. Was not there a sufficient delivery in this case, surrender of control and dominion, to constitute a valid pledge? When this contract was entered into between Cross and the City Bank, the property was in storage in the warehouse of the Continental Can Company, a third person. The warehouseman was notified of the change of interest therein by the bank, and requested to thereafter hold and not deliver the property to any person, except on its written order. The warehouseman in writing promised to so hold the property, as we have seen, for and subject to the order of the bank only. There can be no question that Cross intended to give the bank dominion and control over these cases of peas, as security for the payment of the note and interest. Cross must have expected that the bank would exercise such dominion for such purpose, and his further consent, that the Can Company thereafter hold possession for the bank instead of himself until the note was paid, was unnecessary. The note says: "I have *deposited or pledged as collateral security* for the payment of this note 3,134 dozen cans peas, or 1,567 cases, in storage at Cont. Can Co. plant." Then follows the authority to sell, etc., in case of default in payment of the note. True, in the other paper signed by Cross and delivered to the bank with the note it is stated: "I hereby *assign* all my right, title, and interest in the above-described property on account of loan of $2,500.00 secured this day. [Signed] John M. Cross." But the two papers must be read and construed together as one whole and as constituting the contract or agreement between the parties. If these, read together, constitute a chattel mortgage on the peas, that is an end of the claimant's case, as neither paper was filed as required by the New York statute in the case of chattel mortgages, and, if not filed, a chattel mortgage, in New York, is void as to creditors and the trustee in bankruptcy of the mortgagor. This is now settled. Skilton v. Codington, 185 N. Y. 80, 77 N. E. 790, 113 Am. St. Rep. 885; Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073; Tooker v. Siegel-Cooper Co., 194 N. Y. 442, 87 N. E. 773. But I do not think these papers read and construed together constitute, or were intended to be, a chattel mortgage. The note itself in express terms provides for a sale of the property, etc., in case the note is not paid at maturity, and also denominates the transaction as a pledge as collateral se-

curity for the payment of the note or debt, and the writings are not in the language of a chattel mortgage. "In case of doubt whether a transaction by which personal property is given as security is a pledge or is a sale, mortgage, or absolute assignment, the law favors the conclusion that it is a pledge." 31 Cyc. 797, and cases there cited; Jones on Collateral Securities (3d Ed.) § 14, p. 21, and cases there cited. "Every contract by which the possession of personal property is transferred as security only is to be deemed a pledge." 31 Cyc. 787, and numerous cases there cited; Barber v. Hathaway, 47 App. Div. 165, 62 N. Y. Supp. 329, affirmed 169 N. Y. 575, 61 N. E. 1127; Herrmann v. Central Car Trust Co., 101 Fed. 41, 41 C. C. A. 176 (C. C. A. 2d Circuit). In this last case the Circuit Court of Appeals, per Shipman, C. J., said:

"In view of the facts in the case in regard to the discharge of the debt against the railway company by the Car Trust Company, it may not be absolutely necessary to ascertain whether the contract of January 10, 1890, was a mortgage or a pledge, yet it is important to do so, because it is only upon the theory that the contract was a mortgage that the appellants claim title to the certificates which are a substitute for the bonds. It was not in the form of a mortgage, for it contained no clause of defeasance; but the appellants say that the title was conveyed because the words, 'sell, assign, and transfer,' were used. That is true, and the words ordinarily contained in contracts of pledge, viz. 'to be held as security,' and the promise that upon payment at maturity the Car Trust Company will 'deliver and surrender," instead of 'reconvey,' the security were also used. The question of mortgage or pledge cannot be determined by selecting two or three words which indicate a conveyance of title, and disregarding other language which is also important; for the question is to be determined by the intent of the parties, as gathered from the whole instrument. Thompson v. Dolliver, 132 Mass. 103."

In National Nassau Bank v. Cleary, 171 App. Div. 540, 157 N. Y. Supp. 696, it is held that:

"An assignment of a chattel mortgage as collateral security for a debt, other than that covered by the mortgage itself, amounts to a pledge of the mortgage, and invests the pledgee with only a special property in the chattels mortgaged."

In the instant case the transfer or "assignment" of the peas was plainly stated to be as collateral security. If, then, there was no sufficient delivery to constitute a valid pledge, the trustee is entitled to the whole proceeds of the sale. Returning to that subject, or point, in the case, is it not true that the law does not demand the doing of vain or unnecessary things? To constitute a delivery or taking possession, was it necessary, in view of what was done, for the bank to go or send to the warehouse of the Continental Can Company and transfer the cases of peas from one room to another, or from one locality to another, or to take them outside the warehouse and then return them? In short, considering what was done, was it necessary to handle the cases of peas, or some of them, physically? As already stated, the warehouseman was notified of the pledge, and requested to hold them subject to the order and direction of the pledgee, which it promised to do in writing. Thenceforth was not the Continental Can Company the agent of the bank, storing the goods for it? Had not Cross, by his writings duly signed, surrendered to the bank his possessory right so

long as the note should remain unpaid? If, with these papers, the representative of the bank. had gone to the Can Company and demanded the goods, would it not have been the duty of such company to deliver them? Was not this in legal effect done, and possession and control transferred from Cross to the bank by what was actually written and done? I think the legal possession was actually transferred by the execution of the papers by Cross to the bank and the writing and sending of the letter mentioned to the warehouseman and its reply, it being the actual custodian first for Cross and then for the bank. Can it be said that if A. has an automobile stored in the garage of B., and pledges it to C. by a valid writing delivered to C. as security for a loan then made, and also executes and delivers a transfer of same, which is evidence of right to possession, and C. then writes to B. to hold and store the property for him, as he has the right to it and to its possession, granted by A., and B. writes back that he will so hold, that thenceforth the legal possession is not in C., B. holding and storing for him and no longer holding for A.? Here is a combination of acts and writings relating to a cumbersome article, although there was no physical or manual handling of the property. In First National Bank v. Exchange National Bank (Sup.) 153 N. Y. Supp. 818, it was held:

"An agreement whereby the owner of certain stocks, which are in the possession of a bank as collateral security, transfers them to another bank as a continuing collateral security for the payment to it of any indebtedness then existing or that may thereafter exist on the part of himself or another to said bank, such shares to be deposited with it when surrendered by the first bank, constitutes a valid pledge, even though the certificates remain in the possession of the first bank, because, it being impossible to remove them, their possession by the first bank will be regarded as the possession of the other."

The learned judge who wrote the opinion, speaking of the claim that there was no delivery of the certificates of stock and therefore no valid pledge, said:

"I cannot agree with the learned trustee in bankruptcy in that regard. While it is true that, under ordinary circumstances, it is necessary to have a delivery of the article sought to be pledged before a pledge is complete and effectual, still in a transaction like this, where stock certificates were the subject of the attempted pledge, and where they were in the possession of another party for a specific purpose as collateral security, and where no delivery of possession was at that time possible, the plain intent of the parties to have these stocks pledged for the purpose stated in the agreement between plaintiff and Francis Bacon, dated February 15, 1902, should not be defeated. These certificates represented stocks, but were not the stocks themselves, and it being at that time impossible to deliver them, because of their being held by the defendant Exchange National Bank, a valid pledge was made by the written transfer executed by the owner of the stocks to this plaintiff February 15, 1902. The intention of the parties should be carried out, if that intention can be ascertained from the instrument which was executed by them. A careful reading of it leads to the conclusion that the parties intended that these stocks should be pledged to the plaintiff as a continuing collateral security for the payment to it of any indebtedness of any kind then existing, or that might thereafter exist, on the part of the Waterloo Wagon Company, Limited, or Francis Bacon, to said bank, and it must therefore be held that the instrument of February 15, 1902, was a valid pledge, and not a chattel mortgage; the circumstances surrounding this case justifying the conclusion

that it was also the intention of the parties that the temporary possession by the Exchange National Bank of the stocks in question was also regarded as the possession of the plaintiff, to whom the stocks were pledged by Bacon, February 15, 1902. Wilson v. Little, 2 N. Y. 443, 51 Am. Dec. 307; First National Bank of Waterloo v. Bacon, 113 App. Div. 612, 98 N. Y. Supp. 717; Jones on Pledges (2d Ed.) § 83; 31 Cyc. p. 791, note 67."

When stock has been pledged and the scrip delivered to one party as security for a loan, it may also be pledged to a third party for a further loan, and the possession of the first pledge will be considered the possession of the second pledge through the agency of the first pledgee. The First National Bank of Waterloo v. Bacon, 113 App. Div. 612, 98 N. Y. Supp. 717. Here was an absolute written direction to the warehouseman to hold for the pledgee, and this he in writing promised to do. The instruments signed by Cross and delivered to the bank are not drawn in the form or wording of a chattel mortgage, and there is no defeasance clause or provision. The words are apt and appropriate for a pledge. I am compelled to the conclusion that it was the intention of the parties to pledge the cases of peas to the bank as collateral security for the payment of the note and debt evidenced thereby, and not to mortgage same, and that there was a sufficient delivery under the circumstances, and in view of what was done and the bulky nature of the property, to make the pledge valid and effectual.

In Bowe v. Ellis, 3 Misc. Rep. 92, 22 N. Y. Supp. 369, a case where the goods were in the physical possession of a third person, the court said:

"To prove acceptance and receipt of ponderous and bulky articles by the purchaser, it is not required that there should have been manual delivery by the seller. Atwell v. Miller, 6 Md. 10, 61 Am. Dec. 294. Virtual or constructive delivery is sufficient in any case. Bailey v. Ogden, 3 Johns. [N. Y.] 399 [3 Am. Dec. 509]; Castle v. Sworder, 6 Hurl. & N. 828; Sahlman v. Mills [3 Strob. (S. C.) 384], 51 Am. Dec. 630. All that is required is that the goods be placed within the control and under the dominion of the purchaser (Marsh v. Rouse, 44 N. Y. 643), with intent on the part of both contracting parties to vest the right of possession as owner in the purchaser (Brand v. Focht, 1 Abb. Dec. [N. Y.] 185); and proof of any act or acts from which it may be reasonably inferred that the seller has abandoned possession as owner, and that the purchaser has assumed it, is sufficient evidence of acceptance and receipt to take an oral contract of sale out of the statute of frauds (Jones v. Reynolds, 120 N. Y. 213 [24 N. E. 279]; Gray v. Davis, 10 N. Y. 285), without further proof that the goods were actually transferred from one place to another.

"In the case before us the parties did not specifically agree upon a place for delivery. The place where the chattels were at the time of sale must, therefore, be presumed to have been intended as the place where delivery was to be made. Benj. Sales (4th Am. Ed.) § 682. This was the Stevens House, to which both seller and purchaser had equal access as licensees of the owner or his agent. The chattels were, therefore, upon neutral ground, in the actual physical possession of a third person, and so remained when plaintiff requested defendant to remove them, at the same time informing defendant that they were his. This request was tantamount to a declaration that plaintiff intended to relinquish his lien for the unpaid purchase money and his dominion of the chattels as owner. Thus, there was nothing to hinder defendant from taking possession if he saw fit so to do. That such was his intention was manifest by his promise to remove the chattels, and that his intention was executed and dominion as owner assumed by him was further manifested by his attempted sale to Underhill, acts which were consistent only with his

claim of ownership. Hence there was both receipt and acceptance by defendant, whereby the effect of the statute upon the contract of sale was avoided."

In Macauley v. Hopkins, 35 Hun (N. Y.) 556, there was no delivery at the time, but subsequently it was agreed the property should be shipped to be sold and the proceeds applied in payment of the pledgee's demand, and the goods were shipped accordingly by the pledgor, and it was held that after shipment the pledgor held as agent for the pledgee, and his possession was the possession of the pledgee.

In Young v. Lambert, 18 Wkly. Rep. 497 (1870), cited in Story on Bailments (8th Ed.) 253, it was held:

"Goods left in a warehouse, subject to customs, freight, and storage, and which the warehouseman agrees to hold for the pledgee and deliver to him upon payment thereof, may be considered as sufficiently delivered."

It seems to me while possession, which presupposes delivery by the pledgor and acceptance by the pledgee, is of the essence of a pledge, that the execution of a writing pledging property which is bulky and in the hands of a third person in storage as security for the payment of a present loan of money, accompanied by the execution of another paper transferring the property to the pledgee and which is evidence of right to the possession, and which may be used by the pledgee to secure possession, followed by notice to such third person of the transfer and a request which amounts to an order to hold the property and not deliver it to any other person except on his order, and the warehouseman having the actual physical possession, receives the notice and in writing agrees to so hold and not deliver except as directed by such pledgee, amounts to at least a symbolical delivery and an acceptance by the pledgee—a surrender of dominion by the pledgor and an assumption and exercise of sole dominion by the pledgee. There is no claim here that there was any design or purpose to hinder, delay, and defraud creditors, or that the rights of other parties intervened, or that any credit was obtained thereafter or before by the pledgor on the strength of apparent ownership or possession. There is no evidence that the pledgor at any time after this loan was made exercised any dominion over or made any claim to the property as against the pledgee.

In Third National Bank of Buffalo v. Buffalo German Ins. Co., 193 U. S. 581, at page 588, 24 Sup. Ct. 524, at page 526, 48 L. Ed. 801, the rule is thus stated:

"Possession is of the essence of a pledge in order to raise a privilege against third persons. Casey v. Cavaroc, 96 U. S. 467 [24 L. Ed. 779]; Wilson v. Little, 2 N. Y. 443 [51 Am. Dec. 307]."

In that case there was a mere statement by a borrower from the bank made to the president that his stock in the bank was pledged as security for the loan. It was held that this did not amount to a pledge of the stock, there being no delivery of the certificate, or give the bank any lien thereon as against one subsequently loaning money on the stock in good faith and receiving the certificate of stock as collateral. I think the true distinction between a mere pledge and a chattel mortgage is that in the case of a pledge the possession, actual or symboli-

cal, of the thing pledged, is given to the pledgee as collateral security accompanied by a right of disposition or sale, in event the loan or debt is not paid, there being a special property only in the pledged property transferred, while in the case of a chattel mortgage the whole title is transferred as security for the debt, and which absolute title is subject to be defeated by the performance of the conditions. See Story on Bailments, § 287; Story's Eq. Jur. §§ 1030, 1031; Waterman v. MacKenzie, 138 U. S. 252, 258, 11 Sup. Ct. 334, 34 L. Ed. 923. In Waterman v. MacKenzie, 138 U. S., at page 258, 11 Sup. Ct., at page 336, 34 L. Ed. 923, the court said:

"By a mortgage of personal property, differing in this respect from a pledge, it is not merely the possession or a special property that passes; but both at law and in equity, the whole title is transferred to the mortgagee, as security for the debt, subject only to be defeated by performance of the condition, or by redemption on bill in equity within a reasonable time; and the right of possession, when there is no express stipulation to the contrary, goes with the right of property. Story on Bailments, § 287; Story, Eq. Jur. §§ 1030, 1031; Conard v. Atlantic Ins. Co., 1 Pet. 386, 441 [7 L. Ed. 189]; Casey v. Cavaroc, 96 U. S. 467, 477 [24 L. Ed. 779]; Boise v. Knox, 10 Metc. [Mass.] 40, 43; Brackett v. Bullard, 12 Metc. [Mass.] 308, 310."

In People v. Scudder, 177 App. Div. 225, 163 N. Y. Supp. 739, the court held:

"A pledge differs from a chattel mortgage in that it does not generally pass title to the thing pledged, [as a mortgage does,] but gives only a lien" to the creditors "while the debtor retains the general property. On the contrary, a chattel mortgage is more than a mere security in that it is in the nature of a conditional sale which operates to transfer title to the mortgagee, to be defeated * * * by a full performance of the conditions imposed on the mortgagee."

In a pledge, as seen, a *special* property is always conveyed to the pledgee, but the entire title, subject to defeasance, does not pass. Hence, as before stated, reading the note and other instrument, executed at the same time, together, and a defeasance clause being absent, I cannot discover a purpose or intent to pass the entire title to the bank subject to be defeated by the payment of the debt. The equities of the bank, who loaned the money to the bankrupt, who had the use of it in his business. it is presumed, are very strong as against the general creditors. But this does not warrant any deviation from the rule that possession must have been delivered. American C. Co. v. Erie P. Co., 183 Fed. 96, 105 C. C. A. 388.

Story on Bailments (8th Ed.) § 297, p. 253, says as to possession:

"There need not be an actual manual delivery of the thing. It is sufficient if there are any of those acts or circumstances which, in construction of law, are deemed sufficient to pass the possession of the property."

When the dominion and control over it is passed with consent of the pledgor, I think it sufficient, especially when the property is in storage in the hands of a third person.

As this money, the proceeds of the sale, has been deposited with the City Bank, the claimant, since the sale, and the bank has had the use of same, interest on the note ought to be computed and paid from such proceeds up to the date of sale and deposit only.

From such proceeds the bank is entitled to the amount of the note and interest thereon to the date mentioned, and the trustee to the balance.

So ordered.